Pearson, C. J.
The case is complicated by the fact that, in respect to the count against the defendant as owner of the mill, Wade, who was a partner, has a direct interest, being liable to the defendant for contribution; whereas, in the other count against the defendant, on his collateral individual promise, “to give plaintiff his turn,” Wade had no interest.
The verdict being general, an error, as to either count, is ground for a new trial, and according to the view taken of the case, by this Court, there are many fatal errors in regard to each of the counts.
EIRST COUNT.
1. His Honor was of opinion, that there was no evidence that “ a receipt” for the rice had ever come to the hands of the plaintiff. There was proof of a general custom, at the mill, to give a receipt, “stating the quantity of rice, and that it was at the risk and under the control of the owner,” whenever rice was delivei’d. In the absence of any evidence showing that, for some cause or othei’, the custom was departed from in the instance of the plaintiff, there is a violent presumption that he did take “ a receipt.”
2. The purpose of these receipts was to fix the quantity of rice, delivered at the mill, by the respective customers. It was what is called in the books, “pre-ordained evidence,” that is, evidence agreed on by the parties, as the mode of proof, in respect to the quantity of rice, and the terms on which it was delivered — like a subscribing witness to a bond. In such cases, this pre-ordained evidence is not merely the primary but it is the only evidence to which either party can resort, without proof of his inability to produce it. In the case of a subscribing witness, the principle is of every day’s occurrence; *245 to prove a bond, or other instrument, the subscribing witness must be produced; if that be impossible, then his hand-writing must be proved, and the party is not at liberty to disregard this pre-ordained evidence and prove that the obligor, or maker of the instrument, had admitted that he executed it, unless such admission be, what is called, “ an admission in the cause,” made expressly for the purpose of dispensing with the production of the subscribing witness.
According to this principle of evidence, the plaintiff ought not to have been allowed to proceed with his ease by attempting to show, fliunde, the quantity of rice, until proof was made, on his part, of his inability to produce the receipt. In this case, out of abundant caution, the defendant had given him notice to produce it, and still, he was allowed to proceed and, in effect, attempt to prove the contents of the receipt, to wit, the number of bushels of rice that he had delivered at the mill.
3. His Honor was of opinion that the .demand for 2300 bushels of rice, aud the defendant’s reply, “ it was nothing more than he expected,” was evidence of the quantity. Apart from the considerations, above stated, we do not agree with his Honor in this view of the evidence. It is very difficult to draw -a line between slight evidence and no evidence at all; but taken in connection with the fact, deposed to by the witness, Pettiway, who made the demand, and proves the reply, that "Wade was the active partner and superintended the mill, (so that the defendant could not be .supposed to know the quantity of rice delivered by the customers) it seems to us to be a strained construction, to give these words of the defendant any reference to the quantity of riee, and they are fully satisfied when taken in their ordinary sense, to mean, that the defendant was not surprised, by the fact of a demand being made, as preliminary to an action against him; for that the intention of the flamtif to sue hwn, “ was nothing more than he expected.”
In this connection, it is proper to remark, that, although the power of the court to allow an amendment, after verdict, *246 so as to increase the amount of damages, claimed by the writ, is conceded, still, in most cases, it should be sparingly exercised. Where, by the long pendency of the suit, an amendment becomes necessary, as in ejectment, where the term, laid in the demise, expires, or in debt, or in assumpsit, where the interest exceeds the damages laid in the writ, the amendment is matter of course. In actions where there is no particular measure of damages, as slander, assault and battery, and new matter occurs to aggravate the offense, e. g., a repej tition of the slander after suit brought, or relying on the' plea of justification where there is no ground for it, or where the wound, inflicted, takes a dangerous turn, and the plaintiff is likely to lose a limb, or the like, the discretion of the court may be properly appealed to ; but in actions where there is & fixed measure of damages, as in our case — -the value of the rice, a case rarely occurs where the purposes of justice require the exercise of this power ; for every man is presumed to know best his own business, and to claim all that he thinks he is entitled to. In such cases, this presumption ought to be rebutted, and something offered for the eourt to amend by; as by the production of the receipt, and showing thereby, beyond all question, a mistake in regard to the quantity of rice. The usual course, however, is to allow the plaintiff to remit so rnueh of the damages found as exceed the amount claimed, so as to make the verdict fit the writ; Grist v. Hodges, 3 Dev. 203.
SECOND COUNT.
1. In addition to the above, which applies to both eounts, Wade, the partner of the defendant in the mill, had no interest in this count, as it was for the breach of a collateral promise. So', he wTas a competent witness for either party, in respect to it, and, of course, his admissions, or declarations, were not admissible, as evidence, against the defendant.— There was no test of truth, as,, in .this respect, they were not against his interest, and did mot tend to subject him to liability; and this produces the incongruity of joining the two counts.
*247 2. The alleged promise of the defendant, was to let the plaintiff have “ his turn.” The witnesses state that a turn was 1500 bushels of rough rice. So, under this count, the plaintiff could not recover for any larger amount.
There is no evidence of a consideration to support the promise. It was suggested, on the argument, that the promise was made by the defendant, in order to induce the plaintiff to send his rice to the mill, or in order to keep him from taking it away, after it had been delivered, as he had a right to do by the terms of the receipt, and thus the defendant, being a part owner of the mill, had a direct interest. It is true, if the defendant made the promise for either of these purpoposes, there would be a consideration ; but we are unable to . see any evidence of the fact, either that the plaintiff did not intend to send his rice to the mill, or intended to take it away, ' and that the promise was made to induce him to change his purpose. On the contrary, if permitted ■“ to guess” about-the' matter, we should suppose that the promise was a voluntary offer of kindness, on the part of the defendant, to let the plaintiff have his turn, in order to accommodate him, by enabling him to get a portion of his crop that much sooner into market.
é. His Honor leaves it to the j ury to say, whether the promise was made “ in contemplation of the imminent risk from fire.” There was no evidence of this as a matter of fact, and this Court had decided, when this case was before it at June Term, 1858, (5 Jones’ Rep. 301) that it could not be inferred, from the nature of the transaction, “ that the contingency that the rice might be burnt, if left in the mill, was in contemplation of the parties.” On what ground could the jury, or any one else, infer that the defendant made the promise, because he knew there was great risk from fire, and if any rice was to be burnt, he preferred that it should be his own, rather than the plaintiff’s?!! Or that the plaintiff intended, and was willing, in accepting the offer of the defendant’s turn, to take advantage of such unheard-of generosity ?! So, notwithstanding the opinion of the jury, as it is a mere matter of opinion, *248 and there is mo evidence in regard to it, we are disposed to adhere to the opinion previously expressed by us.
The usual practice of this Court is, to put its decision on some one point, presented by the case, and to refrain from the expression of an opinion, in regard to others, that may appear in the record. This was the course taken when the case was here before, and the result is, that it comes back now with more points than ever. On which account, we have seen proper to make an exception to our usual practice, and to pass on several of the exceptions, presented by the record, with the hope of “ lopping off some of the points,” thereby relieving the next Judge, who tries the case, from the embarrassment incident to the joinder of the two counts.
Per Curiam,
Judgment reversed.