## The Michigan Central Railroad Company v. William W. Burrows and others.

*Railroads: Transporting freight: Diligence: Usual and ordinary demands: Extraordinary contingencies.* Railroad companies are bound to have all reasonable and necessary facilities and appliances for conducting and carrying on in a prompt, skillful and careful manner the business in which they are engaged, and for transporting without unreasonable delay the usual and ordinary quantity of freight offered them for transportation, or which might reasonably and ordinarily be expected; but they are not bound to be prepared for unusual and extraordinary contingencies, such as the great Chicago fire, which no ordinary prudence or foresight could reasonably foresee or anticipate.

*Unusual contingencies: Diligence: Despatch: Average time.* Where an unusual contingency has arisen which unexpectedly largely increases the business and thereby prevents the handling of freight with the usual promptness and despatch, the criterion of reasonable diligence is not the usual average rate of speed in ordinary times, but the average running time under the extraordinary and unusual circumstances existing at the time.

*Negligence: Impossibilities.* The law is not so absurd as to assume to hold any one responsible upon the ground of negligence for not doing that which it was practically under the circumstances impossible to do.

*Railroads: Transporting freight: Preferences: Relief goods: Discrimination: Public necessity.* Giving preference to relief goods sent to the sufferers by the great Chicago fire was not such a discrimination against shippers of other freight as to make carriers liable as for negligence for not forwarding freight in the order in which it was received. All general rules must yield to a great public necessity.

MICHIGAN CENTRAL R. R. CO. *v.* BURROWS.

*Negligence: Impossibilities.* Where the law creates a duty or charge, and the party 'is unable to perform it without any default in him, and has no remedy over, then the law will in general excuse him.

*Railroads: Fruit: Freezing: Negligent delay: Proximate cause.* The freezing of apples while being transported by a subsequent carrier is not so direct and natural a result of unreasonable delay by the first carrier, as to make such first carrier liable therefor by reason of such delay.

*Common carriers: Unreasonable delay: Negligence of subsequent carrier: Proximate cause.* Proof of negligent delay by a subsequent carrier, and that without it the injury would have been avoided, is a complete answer to an action seeking to hold the first carrier responsible by reason of its delay for the injury to fruit by freezing while in custody of such subsequent carrier.

*Heard October 13. Decided November 2.*

Error to Kalamazoo Circuit.

*Edwards & Sherwood* and *G. V. N. Lothrop,* for plaintiff in error, to the point that the injury complained of was not the natural and proximate result of the acts charged, and defendants therefore not liable, cited: *3 Mich., 39; 14 Mich., 489; 3 Hill, 333; 6 Duer, 375; 19 Barb., 36; 1 Strobh., 524; 11 East, 60; 2 Taunt., 314; 1 Esp., 48; 13 M. & W., 738; 7 Pick., 282; 11 Metc., 542; 13 Gray, 481; 13 Ala., 490; 14 Wend., 255; 23 Wend., 525; 35 N. Y., 210; 20 Penn. St., 175; 62 Penn. St., 364; 2 Greenleaf Ev., 256; 2 Pars. Cont., 457; Story on Bail., 586; Angell on Car., 201.*

*Severens, Boudeman & Turner,* for defendants in error, to the same point contra, cited: *30 N. Y., 630, 564; 1 Conn., 487; 12 Conn., 410; 6 Bing., 619, 710; 4 Camp., 112; 3 Lans., 265; 7 Blackf., 497; 3 Mich., 268; 14 Mich., 489; 47 N. Y., 33; 15 Wis., 129; 20 Penn. St., 171; 2 Redf. on R., 8; 3 Kent Com., 210.*

MARSTON, J :

Defendants in error brought an action against the railroad company to recover damages claimed to arise from

unreasonable delay on the part of the company in carrying apples from Vandalia in this state to Chicago.

It appeared that plaintiffs in the court below shipped, November 10, 1871, four car loads of apples, consigned to their agents at Minneapolis, in the state of Minnesota; that the apples were transferred by defendants at Chicago to the next carrier November 17, and arrived at Minneapolis on the evening of November 22, badly injured by frost, having been frozen while in transit from Chicago on or after November 21.

It also appeared, and was not disputed, that the tracks of the railroad company were in good condition; that the company had abundant rolling stock of every kind to do all its business, and that it had no difficulty in moving, storing and taking care of freight previous to October 8, 1871; that on the 8th of October a fire originated on the west side of the city of Chicago, and that about three hundred acres of the city were burned on that and the next day; that the depots belonging to the company caught fire from the surrounding buildings and were destroyed, as were also the tracks within three thousand feet of the depots, and also the tracks in the freight depots, thus rendering it impossible for the company to receive any freight, having neither freight houses to receive it in, nor tracks to handle it on; that the company immediately made all possible efforts to temporarily replace their tracks and buildings, drawing for such purposes their force of men from the east and west ends of their road.

It further appeared, and was not disputed, that large numbers of people in Chicago, after the fire, were suffering and destitute, and that in order to relieve their immediate wants, it became necessary to send clothing, provisions, building material, hardware, stoves and other necessary supplies known as relief goods, forward, which made the freight business threefold greater than it had been before the fire; that the company under these circumstances immediately issued orders, as soon as they were able to carry any freight, to

give relief goods the preference, next in order fruit and perishable property, and then general merchandise.

It also appeared that at the time the apples in question were received by the defendant its line of road was greatly blocked by an accumulation of freight, occasioned by the causes already stated; that previous to the fire the running time of freight trains from Vandalia to Chicago was about twenty-four hours; that at the time this shipment was made the average running time between the same points was ten days, on account of the fire and great increase of freight; and that the apples were carried in about seven days.

Under the facts as stated, the defendant denied that there was any unreasonable delay on its road, and insisted that having completed the carriage of the fruit over its road, and delivered it to the next carrier in good order,· in no event could it be held liable for the alleged injury to the property, occurring while in transit, and in the custody of the next carrier.

Was there, then, under the circumstances stated, any unreasonable delay on the part of the company in the carriage of these apples between Vandalia and Chicago?

Railroad companies are bound to have all reasonable and necessary facilities and appliances for conducting and carrying on the business in which they are engaged in a prompt, skillful and careful manner. It is their duty to keep and maintain their tracks in a good condition and state of repair, to have a sufficient supply of rolling stock to carry, and suitable depots to receive, the usual and ordinary quantity of freight offered them for transportation, or which might reasonably and ordinarily be expected. They are not bound, however, to be prepared for unusual and extraordinary contingencies which no ordinary prudence or foresight could reasonably foresee or anticipate. And where an unusual contingency has arisen, which unexpectedly largely increases the business, or prevents, as in this case, the handling of freight in so prompt and expeditious a manner as the company formerly had been accustomed to do, the company can-

not be charged with unreasonable delay for not carrying freight in the same time it had done previous to such- contingency. In other words, what would or would not constitute unreasonable delay, cannot be determined by a comparison between the actual time and what had been the average running time between two given points under usual and ordinary circumstances. The proper question would be, what was the average running time under the extraordinary and unusual circumstances existing at the time of the alleged delay; and then to ascertain whether the goods in question had been unreasonably delayed beyond such time.

It appears in this case that the average running time between Vandalia and Chicago when these apples were shipped was ten days, while the time occupied in carrying and transferring the apples did not exceed seven, thus showing not only that there was really no delay in this case, but that these goods were given a preference and were carried through in an unusually prompt ,and expeditious manner under all the circumstances.

Look at the result of the doctrine contended for by the plaintiffs if carried out. The usual and average time for carrying freight before the fire between Vandalia and Chicago was two days. Owing to the destruction of the company's tracks and depots, and the large and sudden influx of business, ten days was the average time actually required to carry freight between these same points, and it was impossible for the company to carry it in two days. Should the company, under the facts as presented, be liable for unnecessary delay in each case where more than two days was taken to transport freight between those points? To so hold would be to render the company liable in every instance, and that for a delay caused by circumstances over which it had no control.

The position taken by plaintiffs, defendants in error here, would make it the duty of the company to carry and deliver freight with the same rapidity during the time of these extraordinary occurrences that it did previous there-

to, and hold it responsible for the delay if it did not. But the company found it impossible, without any fault on its part, so to do. The destruction of the tracks and depots utterly prevented the company from handling freight with its accustomed rapidity, and caused a blockade along the entire line. Circumstances beyond their control prevented, and the law does not seek to hold any one responsible upon the ground of negligence for not doing that which it was practically impossible to do.

It was urged, however, that it was the duty of the company to send forward freight in the same order in which it was received; that there should have been no discrimination made, no preference given between the classes of freight received by the company for transportation. After the fire large quantities of goods were being sent forward by relief societies from all parts of the country for the purpose of both preventing and relieving the great suffering and distress which did exist and otherwise would have existed among the people, who had by a great public calamity suddenly been left without proper clothing or houses to shield and protect them from the inclemencies of the season, or sufficient provisions to prevent many of them from imminent danger of starvation. So urgent was the demand for supplies that relief societies sprung up as if by magic all over the country. The people promptly responded to their calls, and the necessary supplies of all kinds were sent forward in such abundance that railroad companies, crippled as they were by the fire, found it difficult to promptly carry and dispose of their freights. Relief goods, therefore, were given the preference, and the companies would have been justly chargeable with public condemnation had they refused to give a preference to and carry all such goods offered for transportation under the circumstances. Although the company had suffered very great injury by the fire, yet it was doing all in its power to repair the damage as promptly as it could, and at the same time making every effort to carry forward all goods received, making, however, a just, proper,

and highly commendable discrimination in favor of that class of goods which would alleviate the suffering and distressed. The law is not so harsh and unjust as to punish a common carrier who makes such a discrimination under the circumstances, but rather commends and approves what was done. While, therefore, it may be true as a general proposition, that it was the duty of the company to forward freight in the order in which it was received, yet in this case there was a great public necessity to which all general rules must bend, making it the imperative duty of the company to give relief goods a preference. "The law itself and the administration of it," said Sir W. Scott *(2 Dods., 323–4)*, "must yield to that to which every thing must bend—to necessity. The law, in its most positive and peremptory injunctions, is understood to disclaim, as it does in its general aphorisms, all intention of compelling to impossibilities, and the administration of laws must adopt that general exception in the consideration of all particular cases. In the performance of that duty, it has three points to which its attention must be directed. . In the first place it must see that the nature of the necessity pleaded be such as the law itself would respect, for there may be a necessity which it would not. A necessity created by a man's own act, with a fair previous knowledge of the consequences that would follow, and under circumstances which he had then a power of controlling, is of that nature. *Secondly*, that the party who was so placed used all practicable endeavors to surmount the difficulties which already formed that necessity, and which on fair trial he found insurmountable. I do not mean all the endeavors which the wit of man, as it exists in the acutest understanding, might suggest, but such as may reasonably be expected from a fair degree of discretion and an ordinary knowledge of business. *Thirdly*, that all this shall appear by distinct and unsuspected testimony; for the positive injunctions of the law, if proved to be violated, can give way to nothing but the clearest proof of the necessity that compelled the violation." And it is also said

to be a general rule admitting of ample practical illustration, "that where the law creates a duty or charge, and the party is unable to perform it without any default in him, and has no remedy over, there the law will in general excuse him."—*Paradine v. Jane, Aleyn*, 27, cited per *Lawrence, J., in 8 T. R.*, 267 ; *Evans v. Hutton*, 5 *Scolt, N. R.*, 670.

This case comes within the principles quoted. Here was a necessity which the law would respect. It was not created by the company's own act, but by a power which proved to be beyond the control of man. The company used all practicable endeavors to surmount the difficulties which formed that necessity, and all this appeared by distinct and unsuspected testimony. We are all of opinion, therefore, that from the undisputed facts in this case there was not only no unreasonable or unnecessary delay in the transportation of the apples, but that the same were carried within the then average time of carrying freight between Vandalia and Chicago, and that the jury should have been so instructed.

Admitting, however, that there was unreasonable delay between Vandalia and Chicago, would the defendant by reason thereof be liable for the injury which the apples sustained by freezing while in the custody of the next carrier?

In *Clark v. Moore et al., 3 Mich.*, 62, it was said: "No damages are ever recoverable in actions *ex contractu*, unless they are shown by the party claiming them to be the natural and proximate consequence of the breach complained of. Of course each of the circumstances which concurred with the breach in producing the damage, and without which it would not have happened, is a part of its cause, and if any of these concurring circumstances are so far out of the ordinary course of nature, or of human affairs, that they cannot be fairly presumed to have contemplated by the parties at the time of making the contract, then the damage is not the natural result of the breach, and is therefore not recoverable." This rule has been since repeatedly followed.

The contract which the defendant entered into in thi

case was to carry the property safely and deliver it within a reasonable time to the next carrier at Chicago. The only breach of this agreement complained of was the failure to deliver within a reasonable time. Are, then, the damages claimed the natural and proximate consequence of such breach? We think not. To be so the loss must be immediately connected with the supposed cause of it. The loss in this case might or might not have occurred even had there been no delay. If in the ordinary course of events a certain result usually follows from a given cause, then we may well consider the immediate relation of the one to the other to be established. Cold, freezing weather does not, however, in the ordinary course of events, follow from mere delay; such is not the natural and direct result of the delay. It is true that in certain climates, and at certain seasons, such an injury would be much more likely to result from delay, while at others there would be not even a possibility of such a result following. It is very evident, therefore, that as we approach the one or the other we must enter upon debatable ground, where it would be very difficult, if not indeed impossible, to say what the result of a given delay would be. Where fruit is to be carried a long distance, especially in such a country as this, where the climate is so changeable, it would as frequently result that delay would be the cause of averting such an injury as of contributing to it. It may be true that had there been no delay whatever on the part of defendant, the loss would not have happened. The law, however, cannot enter upon an examination of, or inquiry into, all the concurring circumstances which may have assisted in producing the injury, and without which it would not have occurred. To do so would only be to involve the whole matter in utter uncertainty, for when once we leave the direct, and go to seeking after remote causes, we have entered upon an unending sea of uncertainty, and any conclusion which should be reached would depend more upon conjecture than facts.

Lord Bacon said: "It were infinite for the law to con-

sider the causes of causes, and their impulsions one of another, therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree."—*Bacon's Maxims.*

The following cases are so directly in point, and the reasoning therein so satisfactory, that a reference thereto will render any farther discussion unnecessary.—*Denny v. N. Y. C. R. Co., 13 Gray, 481; Railroad Company v. Reeves, 10 Wall., 176; Morrison v. Davis, 20 Penn. St., 171; Hoadley v. Northern Transportation Co., 115 Mass., 304.*

The court, therefore, should have given defendant's eleventh request to charge.

We think the court also erred in refusing to give defendant's twelfth request. This request was based upon the assumption that the Chicago and Northwestern R. R. Co. was guilty of negligent delay in carrying the apples after delivery to them by the defendant, and the court was requested to charge, in substance, that if the jury should find that without such delay the damage would not have occurred, then the plaintiffs could not recover. It is somewhat difficult to conjecture upon what theory this request was refused. If the jury should find that there was negligent delay on the part of the carrier to whom defendant delivered the apples, and that without such delay the injury would not have occurred, then clearly this defendant should not be held responsible for an injury caused by the negligence of others over whom it had no control. Take the case of fruit, during the summer season, shipped at San Francisco for New York; during the transit it passes over several different lines of railroads; there is a delay of two days on each line, and in consequence of the entire delay, the fruit on reaching the ultimate consignee, is found badly damaged. Is the first carrier to be held responsible for the consequence of the entire delay? Such a rule, to say the least, would savor very much of harshness, and if carried out to its legitimate results would, we think, end in absurdity. Suppose the fruit shipped at San Francisco was consigned to the European

market, and each different carrier through whose hands it passed delayed it somewhat, and that in consequence of the combined delay, the fruit on arriving at its destination was found injured; or, arriving during a riot, was wantonly destroyed ; should the first carrier be held responsible for the entire loss? To so hold, there should be something in the undertaking or agreement into which the company entered, to show that it contracted with reference to such an enlarged liability; in other words, such an injury would not be the natural result of the delay on the part of the first carrier, but the result in part of the combined delay. It would not, therefore, naturally result from the breach on the part of the first carrier, nor could such a result have been contemplated by the parties at the time of entering into their agreement.

As the views we have taken of this case will be decisive upon a new trial, we do not consider it necessary to discuss the other questions raised. The judgment of the court below must be reversed, with costs, and a new trial granted.

The other Justices concurred.