# Lehman, Durr & Co. v. Pritchett.

### *Action against Commission Merchants and Warehousemen for Loss of Cotton by Fire.*

1. *Factor, or commission merchant; liability for failure to sell cotton as per instructions.*—A factor, or commission merchant, receiving instructions to sell his principal's cotton, is not liable for a failure to sell within a reasonable time, unless he has the possession, actual or constructive, so that he can make a valid sale and delivery; and if the commission merchants are also engaged in business as warehousemen under a different partnership name, and the cotton is stored in their warehouse, warehouse receipts having been given for it (Code, §§ 1174–78), they can not make a valid sale, unless the receipts are delivered to them.

2. *Same; liability for cotton destroyed by fire.*—Commission merchants and warehousemen, having possession of cotton ordered to be sold by their principal, are not liable for its subsequent destruction by fire, without negligence or other fault on their part, although they failed to sell within a reasonable time. (*Pattison v. Wallace*, 1 Stew. 48, questioned and not followed.)

APPEAL from Montgomery Circuit Court.
Tried before Hon. JOHN P. HUBBARD.

TOMPKINS, LONDON & TROY, for appellants.—1. The loss by fire was not the proximate result of delay in selling the cotton, and the appellants are not answerable in damages. 23 Ohio State, 532; 10 Wallace, 176; 13 Gray, 481; 115 Mass. 304; 91 Penn. St. 310; 33 Mich. 6. 2. Appellants being sued under their firm name as commission merchants, the case must stand, so far as their liability is concerned, just as it would stand in case the cotton had been stored in the warehouse of a third party.

WATTS & SON, *contra*, cited *Glover v. Taylor*, 41 Ala. 128; *Pattison v. Wallace*, 1 Stew. 48.

CLOPTON, J.—Appellee seeks by the action, which is brought against appellants as commission merchants and warehousemen, to recover for the loss of five bales of cotton, which they failed to sell in a reasonable time after having been so instructed, and which they kept on hand until it was destroyed by fire. The rulings of the court, in charging the

[Lehman, Durr & Co. v. Pritchett.]

jury, raise the question whether the defendants are liable for
the value of the cotton, if they failed to sell it after receiving
instructions a sufficient time to enable them to sell before the
cotton was burned, though the warehouse receipts were not
sent to them, and they did not demand them, nor notify
plaintiff that they would not sell without them. In October,
1885, tenants of plaintiff stored in her name the cotton in
controversy in the Alabama Warehouse, and took three sep-
arate receipts for the same, which were turned over to her
agent. During the same season, the plaintiff shipped and
consiged for sale to the defendants, as commission merchants,
fourteen other bales, the receipts for which were kept by
them, and were in their possession when the instructions to
sell were given. This cotton, the defendants sold. A fair
and just consideration of the instructions of the court, given
and refused, require us to assume that defendants were di-
rected to sell the cotton in dispute, and also, that the ware-
house receipts were not delivered to them. .

The business, duties and liabilities of factors and commis-
sion merchants are substantially the same, the terms being
ordinarily used inter-changeably. A factor, or commission
merchant, as generally defined, is an agent employed to sell
goods or merchandise consigned or delivered to him, by or
for his principal, for reward—usually a commission. The
features which mainly distinguish a factor from a broker
are, the former is entrusted with the possession, disposal and
control of the property, and may sell in his own name, bind-
ing the principal; and the latter does not usually have pos-
session, disposal and control, and should sell in the name of
his principal. While, as a general rule, a commission mer-
chant is bound to obey the instructions of his principal, the
right to give instructions to sell, and the correlative duty to
obey, depend on the existence in fact and in law of the rela-
tion, from which the right and duty arise, to the particular
party by whom the instructions are given. The relation is
only created when the property is consigned or received, or
is placed at the disposal, or under the control of the commis-
sion merchant to be sold. Whenever he receives the prop-
erty without special directions as to the time, mode or price,
the duty is devolved to use due diligence to sell in a reason-
able time; but the duty is not devolved until he receives such
possession and power of disposal and control, as will enable
him to make an effectual sale—to deliver possession and to
pass title. In *Perkins v. State*, 50 Ala. 154, it is said: "a

33

[Lehman, Durr & Co. v. Pritchett.]

commission merchant, we understand to be one, who receives goods, chattels or merchandise for sale or exchange. Possession of the thing to be sold or exchanged, and authority to sell or exchange, or otherwise dispose of it, for a compensation to be paid by the owner, or derived from the disposition, are essential to his character." It follows, that if the cotton had been stored in plaintiff's name in a warehouse, with which defendants had no connection, the instructions to sell would have imposed no duty to obey until the warehouse receipts were delivered, so as to authorize them to demand and receive possession—constructive possession.

It is not contended that the cotton was consigned to the defendants, or that it was in their possession; but, it is insisted that they had possession and power to dispose and control it, by reason of their connection with the warehouse in which it was stored. The contention is rested on the following facts: The defendants were commission merchants doing business as partners under the firm name of Lehman, Durr & Co. The partners also owned, individually, the Alabama Warehouse, and carried on the warehouse business, as partners under the firm name of "The Alabama Warehouse Company." The business and transactions of the two partnerships were kept separate and distinct, but daily reports of the cotton stored in the warehouse were made to Lehman, Durr & Co. The defendants were sued as partners composing the latter firm. In a suit against them as such partners, a recovery can not be had, founded on a breach of duty and their liability as warehousemen. Each partnership has a distinctive personality, and for all the purposes of suit must be regarded the same as if the individual members were different persons.

As at common law, a bailee may safely restore the subject of bailment, or account for the proceeds thereof to the bailor, when not notified of an adverse right or claim by a stranger, it may be, that the defendants having received instructions to sell from the bailor in one of their partnership capacities, and having possession and control of the cotton as bailees in the other, it would have been, independent of statute, their duty to obey the instructions. This question, however, we do not decide. The statutes intervene to qualify and restrict the common-law right and duty of warehousemen. They provide that warehousemen, on receiving property for safe keeping, shall give a receipt therefor to the person from whom received. Such receipt is made transferable by indorse-

[Lehman, Durr & Co. v. Pritchett.]

ment, unless the words, "not negotiable" are plainly written or stamped thereon, and if these words are not plainly written or stamped on the receipt, the warehouseman is prohibited to deliver the property except on the delivery and cancellation of the receipt, unless it has been lost or destroyed. Code, 1886, §§ 1174–1178. Without the delivery and cancellation of the receipts, the Alabama Warehouse Company was without right or authority to deliver the cotton to the plaintiff, and equally to, or on the order of Lehman, Durr & Co., as her agents and commission merchants. The cotton, not being consigned to Lehman, Durr & Co., and the receipts not having been sent or delivered, they had no power to acquire possession, management, disposal or control of the cotton; and if they had sold it, could not have safely delivered it to the vendee. Even, if the warehouse business had been carried on by Lehman, Durr & Co., as a branch and part of their partnership business, and not by a different partnership and under a different name, they could not, as warehousemen, have rightly and safely delivered the cotton except on delivery and cancellation of the receipts. They might, at their option, have sold it, and incurred the risk of the receipts having been transferred, and of liability to the transferree; but the law does not devolve the duty to sell, in contravention of its provisions, until the receipts are delivered to them, as commission merchants. To fasten on them a liability for a breach of their duty as commission merchants, there must be something which is an equivalent of a consignment or delivery of the cotton for sale.

The court, also, instructed the jury, that the defendants, if liable, were liable for the value of the cotton. The warehouse, with the cotton, was burned March 10, 1886. It is undisputed that the fire was accidental and was not caused by any negligence of the defendants, or of the Alabama Warehouse Company. There are classes of cases in which it was ruled, that the defendant was liable for the value of the property, though it may have been destroyed by some subsequent accident, with which the act of the defendant had no legal connection. In such cases, so far as our examination has extended, the liability was rested on the character in which the defendant was acting, or some act done, by which responsibility for the value of the property was incurred before its destruction; such as that he was a common carrier and an insurer against such accidents, as in *Lou. & Nash. R. R. Co. v. McGuire*, 79 Ala, 395; or he had inter-

fered with the property so as to constitute his act a conversion, or so as to authorize the plaintiff to elect to treat the property as the defendant's, and claim payment therefor. If it be conceded that it was the duty of the defendants to sell the cotton in a reasonable time after receiving instructions, its subsequent loss by fire can not be regarded as the natural and proximate consequence of delay in selling—"according to the usual course of things." The burning of the cotton was an accidental or collateral injury, not usually following as the result of such delay. If the defendants were in duty bound as commission merchants to sell the cotton in a reasonable time, and they failed to do so, they would be liable for any injury naturally resulting therefrom; but not for injury suffered from an extraordinary or fortuitous cause having no relation to the delay, except that it was cotemporaneous.—*Daughtery v. Am. Un. Tel. Co.*, 75 Ala. 168; *East Tenn. Va. & Ga. R. R. Co. v. Lockart*, 79 Ala. 315; *Burton v. Holly*, 29 Ala. 318.

Counsel cite and rely on *Pattison v. Wallace*, 1 Stew. 48, where it was held that a ginner, who received cotton under an agreement to pick and bale it in preference to all other cotton, but who ginned the cotton of other persons, leaving plaintiff's cotton unginned, and the gin-house, with the cotton was subsequently burned, was liable for the value of the cotton, though the burning was without fault on his part. Of that case, it may be said, that it stands almost, if not quite alone, is opposed by the overwhelming weight of authority, and has been departed from in principle by this court in all the later cases. It does not seem to have been much considered, and the principle therein asserted is assumed without citation of authority, or argument, to sustain it. We can not extend it to other or similar cases, in which there is no fraud, bad faith, or negligence causing the injury. In *Ashe v. DeRossett*, 5 Jones L. 299, the owner of a rice mill agreed with a planter, that if the latter would bring his rice to the mill, it should have priority in being beat, according to a turn to which the owner was entitled; it was not beat according to the agreement, but was kept in the mill, and before being beat the mill and rice were consumed by fire. Pearson, J., says: "Its being burnt was an accident unlooked for and unforeseen, and can, in no sense, be considered as having been caused by the fact that it was not beat in the turn promised by the defendant's intestate, consequently the damages were too remote." In *Daniels v. Bal-*

[Thweatt v. McCullough.]

*lantine*, 23 Ohio St. 532, the defendant contracted to tow the plaintiff's barge by a steam tug, from Bay City, Michigan, to Buffalo, New York. The voyage was voluntarily suspended and delayed after having been commenced, and after being resumed a storm was encountered by which the barge was lost. It was held, "that the defendants, by the mere fact of the delay, did not become responsible for the loss of the barge, although the delay was unnecessary and unreasonable, and although, as the event proved, the barge, but for the delay, would probably have been safely towed to its place of destination. In such case, the storm must be regarded as the proximate, and the delay, as only the remote cause of the loss."

The following cases are cited as sustaining and illustrating the application of this rule of remoteness of damages. *Denny v. N. Y. Cen. R. R. Co.*, 13 Gray 481; *Morrison v. Davis*, 20 Penn. St. 171; *R. R. Co. v. Reeves*, 10 Wal. 176; *Jones v. Gilmore*, 91 Penn. St. 310; *Smith v. Smith*, 45 Vt. 433; *Mich. Cen. R. R. Co. v. Burrows*, 33 Mich. 6; *Walrath v. Whittekind*, 26 Kan. 482. In the present case the burning of the cotton was the result of an accidental or collateral injury, between which and the delay in selling there was no necessary or natural connection. The fire must be regarded as the proximate, and the delay as the remote cause of the loss of the cotton. The damages, for which the jury were instructed the defendants would be liable, were too remote.

Reversed and remanded.