EXTINGUISHER CO. v. RAILROAD.

(Filed December 17, 1904).

CARRIERS—*Negligence—Proximate Cause.*

> Though a carrier of goods was negligent in failing to forward goods shipped, it is not liable for the loss of the goods by fire, where it was not negligent with respect to the fire, in the absence of evidence that the negligence in failure to forward the goods was the proximate cause of the loss.

ACTION by the General Fire Extinguisher Company, heard by *Judge W. R. Allen* and a jury, at July Term, 1904, of the Superior Court of MECKLENBURG County.

Plaintiff, on March 12, 1902, delivered to the Seaboard Air Line Railway Company at Charlotte a car-load of iron piping to be delivered to the Rhodis Manufacturing Company at Granite Falls, N. C. The Seaboard Air Line Railway Company issued therefor its bill of lading—"Released"— contracting to deliver it to the consignee or to its connecting line at Lincolnton, N. C., to be carried to its destination. The jury, in response to an issue submitted, found that the Seaboard Air Line Railway Company delivered the piping to the defendant company at Lincolnton, being the connecting line between said point and Granite Falls, on March 15th, being Saturday. About one-half of the piping was carried to its destination by defendant. The remaining half, while in the defendant's possession awaiting shipment, was destroyed by fire communicated to the car by the defendant's warehouse, which was burned on the morning of March 18th. The delay in forwarding the whole of the piping on the day of its delivery, or Monday following, was caused by the failure of defendant to have sufficient cars for that purpose. The defendant was at that time a narrow-gauge road. The car containing the piping was on the track of the Seaboard Air

Line Railway Company near the warehouse of defendant. It was in evidence that the warehouse was burned about 1 o'clock on the morning of the 18th of March. There was no evidence as to how the fire originated. It was in evidence that when the fire was discovered the warehouse was enveloped in flames. No night watchman was kept at the depot. The defendant kept tubs and barrels filled with water at the depot. The people of Lincolnton had no provision for "fighting fire"—depended on buckets of water. The jury, having found that the piping was delivered to defendant company, responded affirmatively to the second issue: "Was the destruction of that part of the shipment of pipe by fire caused by the negligence of the defendant as alleged in the complaint?" The defendant in apt time requested the Court, in writing, to instruct the jury: "That if the jury find as a fact, from the evidence, that part of the pipe was destroyed by fire without any fault on the part of the defendant, and that it provided such appliances and equipments for protecting the property in its control and possession from fire as were ordinarily in common use in the town of Lincolnton, and exercised such care over the same as an ordinarily prudent person would have done under similar circumstances, then the jury should answer the second issue 'No.'" The Court declined to give the instruction. Defendant excepted. The Court, in response to plaintiff's request, instructed the jury on the second issue: "That it is the duty of a common carrier to carry and deliver with reasonable promptness under all circumstances, and if after defendant had received said shipment or car of pipe from the Seaboard Air Line Railway it could with reasonable promptness (have) carried the shipment of pipe from Lincolnton to its destination before the fire occurred, it was defendant's duty to do so, and such failure would be negligence, and if this negligence (was the)

cause of the injury the second issue should be answered 'Yes.' "        :

"The law imposes upon common carriers the obligation to have and to furnish sufficient facilities for reasonably prompt transportation of goods tendered for carriage, and would be liable for failure to transport promptly, whether the failure is due to a want of facilities or to a captious refusal to carry; and if the jury shall find that the failure of defendant to carry and deliver the said car or shipment of pipe to its destination before the said fire occurred was due to the want of sufficient cars to carry the usual and ordinary amount of freight over its road, then defendant was negligent, and this was the cause of the injury, the second issue should be answered 'Yes.' "

From a judgment for the plaintiff the defendant excepted.

*W. F. Harding,* for the plaintiff.
*Osborne, Maxwell & Keerans* and *J. H. Marion,* for the defendant.

CONNOR, J., after stating the case. In the view which we take of the case it becomes unnecessary to pass upon the defendant's exceptions to his Honor's charge upon the first issue. Assuming that, as found by the jury, the piping had been delivered to the defendant company and that the defendant was in default in not having, as was its duty, a sufficient number of cars to send it within a reasonable time to Granite Falls, we are of the opinion that the defendant was entitled to the instruction asked, and his Honor should not have given the instruction asked by the plaintiff. The defendant, by its failure to ship within a reasonable time, became liable for such damages as naturally and proximately resulted from such breach of contract or duty. *Lindley v. Railroad,* 88 N. C., 549. *Pearson, J.,* in *Ashe v. DeRossett,* 50 N. C., 299, 72 Am. Dec., 552, says: "When one violates

his contract he is liable only for such damages as are caused by the breach, or such as being incidental to the act of omission or commission, as a natural consequence thereof, may reasonably be presumed to have been in contemplation of the parties when the contract was made. This rule of law is well settled, but the difficulty arises in making its application." In that case a quantity of rice was sent to the mill of defendant's intestate pursuant to a contract that it was to be worked in its "turn." The rice was not worked in its "turn." The mill with its contents was thereafter burned. In an action on the contract for failure to have the rice beaten in its "turn" the plaintiff claimed the value of the rice as the measure of the damage to which he was entitled. This Court held that, in the absence of any evidence of negligence in respect to the burning of the mill, he was not entitled to recover the value of the rice. The Court said: "There is nothing to show that the contingency that the rice might be burned if left in the mill was in the contemplation of the parties. On the contrary, its being burnt was an accident unlooked for and unforeseen, and can in no sense be considered as having been caused by the fact that it was not beat in the turn promised by the defendant's intestate; consequently the damages were too remote." *Wells v. Railroad,* 51 N. C., 49, 72 Am. Dec., 556, in which the principle was applied to a contract of carriage. Upon the second trial of *Ashe v. DeRossett, supra* (53 N. C., 240), the Court below submitted the question to the jury to say whether the promise was made in contemplation of the imminent risk from fire, etc., and they so found. This Court held that there was no evidence to sustain the finding, saying: "So, notwithstanding the opinion of the jury, as it is a mere matter of opinion and there is no evidence in regard to it, we are disposed to adhere to the opinion previously expressed by us." In *Whitford v. Foy,* 65 N. C., 265, the case is approved and the distinction pointed

out wherein a bailee misuses the property or by conduct converts it to his own use, in which case, if the property is lost or destroyed, he is liable for its value, without regard to the cause of such loss, in an action of trover under the former system, or for a conversion now. The Court says: "But such a rule has never been applied to other contracts, still less to a mere neglect by a trustee, when no fraud is imputed." In *Sledge v. Reid,* 73 N. C., 440, the principle was applied to the case of a wrongful taking by a sheriff of a mule—the Court refusing to give damages for loss of plaintiff's crop. The Court cite *Ashe v. DeRossett, supra,* and *Hadley v. Baxendale,* the leading case on the subject. *Edmundson v. Fort,* 75 N. C., 404; *Ford v. Railroad,* 53 N. C., 235, 78 Am. Dec., 277. The principle has been frequently applied in other courts to cases against carriers negligently delaying the shipment of freight. In *Morrison v. Davis,* 20 Penn., 171, 57 Am. Dec., 695, the defendant's common carriers by water received the plaintiff's goods for shipment by way of canal. They used a lame horse and thereby the boat was delayed. When the boat reached the Juanita division of the canal it struck an unprecedented flood and the plaintiff's property was injured. In an action for the negligent delay it was sought to recover the value of the property. The Court said that the proximate cause of the disaster was the flood; the fault of having a lame horse was a remote one, which, by concurring with the extraordinary flood, caused the injury. "In any other than a carrier's case the question would present no difficulty. The general rule is that a man is answerable for the consequences of a fault only so far as the same are natural and proximate, and as may on this account be foreseen by ordinary forecast, and not those which arise from a conjunction of his fault with other circumstances of an extraordinary nature." After discussing the question at some length the Court say: "Now there is nothing in the

policy of the law relating to common carriers that calls for any different rule as to consequential damages to be applied to them. They are answerable for the ordinary and proximate consequences of their negligence and not for those that are remote and extraordinary; and this liability includes all those consequences which may have arisen from the neglect to make provision for those damages which ordinary skill and foresight is bound to anticipate." *Daniels v. Ballentine,* 23 Ohio St., 532, 13 Am. Rep., 264; *Denny v. Railroad,* 79 Mass., 481, 74 Am. Dec., 645. The Court cites with approval *Morrison v. Davis, supra,* saying: "The defendants failed to exercise due care and diligence in not being possessed of a sufficient number of efficient working engines to transport the plaintiff's wool with the usual ordinary and reasonable speed. The consequence of this failure on their part was that the wool was detained six days at Syracuse. This was the full and entire effect of their negligence, and for this they are clearly responsible." The property was burned in defendant's warehouse after its arrival at the point of destination. It was held that the defendant was not liable. *Railroad v. Burrows,* 33 Mich., 6; *Hoadley v. Transportation Co.,* 115 Mass., 305, 15 Am. Rep., 106; *Railroad v. Reeves,* 77 U. S., 176. The contract with the plaintiff by which the defendant carried the freight "released" relieved it by its common law liability as insurer, but not against injury resulting from its own negligence. *Smith v. Railroad,* 64 N. C., 235; 6 Cyc., 393. As his Honor properly told the jury, the burden was therefore on the plaintiff to show that the piping was destroyed by the negligence of the defendant. Of course, in view of the law as we have seen, such negligence, if any, referred to the burning of the warehouse—either in respect to the origin of the fire or the facilities for controlling it. His Honor told the jury that the measure of duty in this respect was ordinary care, or the care of the prudent man.

There is no suggestion as to the origin of the fire; it may, so far as it appears, have been caused by rats, matches, incendiary or any other of the unaccountable causes from which human experience teaches it is next to impossible to provide. In regard to keeping a watchman at the depot, we are not prepared, in the absence of any evidence that it is usual to do so, to say that it was the duty of defendant to do so. It would seem that if the defendant used the same precaution used by citizens of Lincolnton it would discharge its duty. While it is true that this Court has, following the Supreme Court of the United States, and probably a majority of the State Supreme Courts, held that, except in very rare and exceptional cases, negligence is a question of fact and the measure of duty is the conduct of the prudent man, we think that it is still the duty of the judge to explain to the jury the law in the light of the testimony. *Russell v. Railroad,* 118 N. C., 1098; *Hinshaw v. Railroad,* 118 N. C., 1047. We have no purpose to question or shake the doctrines as laid down in those and later cases. In the application of the rule the most careful and anxious attention and desire to keep true to the line cannot always secure results satisfactory to minds approaching cases from opposite points of view and often preconceived mental bias. In this case there was no conflicting evidence. The jury had a full and intelligent description of the conditions, a judge of marked ability and clearness of judgment heard the testimony, and if there had been no evidence of the way in which owners of property in the same town protected their houses from fire the jury would have had nothing save their own experiences and their individual opinions as to what a prudent man would have done in respect to property situated as was the defendant's to protect it from fire, other than the damage incident to the passing of engines. What may have been the duty of the Court in instructing the jury in such condition of the evidence is not presented in this case.

We are of the opinion that the defendant was entitled to have the jury told that the measure of duty was the care taken by prudent citizens of Lincolnton in that respect to their property. Defendant's exception in that respect must be sustained. His Honor should have told the jury that there was no evidence showing that the delay in shipping was the proximate cause of the destruction of the property. The inquiry would thus have been narrowed to the question of negligence in respect to the means provided for "fighting fire." What would have been the liability of the defendant if the freight had been delayed beyond the number of days fixed by the statute it is unnecessary to suggest. We have not considered the exceptions directed to the first issue. There must be a

    New Trial.