This is an action to recover damages for the breach of a (663) written and a verbal contract for conversion of 250 cords of wood, and for the negligent destruction by fire of 200 cords of wood.
The plaintiff had a contract with the Champion Fiber Company by which he was to sell it from 1,500 to 3,000 cords of pulp wood. On 21 October, 1916, the defendant entered into a contract with the plaintiff by which the plaintiff was to take the pulp wood left on the boundary, reasonably accessible to the railroad, and pay the Spruce Company therefor $3 per cord stumpage. Under the contract, the Spruce Company, which was operating a railroad, agreed to furnish cars to the plaintiff when the plaintiff procured cars from the Black Mountain Railroad for that purpose. They were to be gondola cars. The plaintiff commenced his operations, and after operating several months a fire occurred which burned a part of his wood and he ceased his operations and brought suit, alleging four causes of action.
In one cause he claimed $1,000 damage on account of the burning of 200 cords of wood; in another he claimed $1,250 for wood which he claimed he had piled on the right of way and was converted by the defendant; in the third he claimed $50 by reason of verbal contract for logging for defendant; and in the fourth his claim was for profit he would have made, in the sum of $2,400, had the contract not been breached by the defendant in failing to furnish cars.
The plaintiff also claimed the right of recover for the wood burned and the wood converted under this cause of action for breach of contract.
The plaintiff alleged and contended that the defendant violated the contract by failing to furnish cars as it was required to do under the contract, and that he was compelled to cease operations for that reason, and that on account of the failure to furnish cars he had wood cut and in the woods prepared for shipment which was required to remain until burned, and defendant was, therefore, responsible for his damage to the amount of his profit, and that he would have finished cutting the (664) boundary, from which he would have obtained 2,400 cords of wood at a profit of $1 a cord.
The defendant denied that it had in any way breached the contract. It alleged and contended that it was anxious to have the wood cut and taken, and that it not only furnished all the cars set apart for Walls by the railroad company, but allowed Walls to take cars that were furnished to defendant for its own purpose. It alleged that Walls took the more accessible wood, became largely indebted to the Champion Fiber *Page 705 
Company, and abandoned the contract without cause, whereby the defendant was damaged. There was a great difference in the testimony as to the amount of wood which could have been taken and the amount that was burned and converted.
At the close of plaintiff's testimony the defendant moved for judgment of nonsuit: First, as to the first cause of action, and second, as to the second cause of action.
It was contended by the defendant that there was a car shortage, and that the evidence of the plaintiff showed that the defendant had furnished to plaintiff 18 cars, and that the plaintiff's testimony showed that no more than 18 cars had been furnished to the defendant for the plaintiff.
The motions to nonsuit were overruled, and the defendant excepted.
The court charged the jury, among other things, as follows: "Now, the court charges you that if you find from the greater weight of the evidence in this case — the preponderance of the evidence — that they received gondola cars there which could be operated on this track of the Spruce Company and the other line, and that they failed and refused to furnish them to Walls, that would be a breach of the terms of their contract; that if you so find from the greater weight of the evidence you should answer the first issue `Yes.'" The defendant excepted.
He also charged the jury they could consider as an element of damage for breach of contract the wood destroyed by fire if they found that cars were not furnished according to the terms of the contract, and that the wood would have been moved before the fire if the cars had been furnished, and defendant excepted.
There was also objection to the recovery of profits and there are certain exceptions to rulings on the evidence there was be adverted to.
At the conclusion of the evidence there was a motion for judgment of nonsuit and exception by defendant to its refusal.
The jury returned the following verdict:
1. Did the defendant commit a breach of its contracts with the plaintiff, as alleged in the complaint? Answer: "Yes; verbal and written."
2. What damages, if any, is the plaintiff entitled to recover by reason thereof? Answer: "$2,800."
3. Was the plaintiff's wood burned by the negligence of the (665) defendant, as alleged in the complaint? Answer:.....................
4. What damages, if any, is plaintiff entitled to recover by reason thereof? Answer:........................
5. Did the plaintiff commit a breach of his contract with the defendant, as alleged in the answer: Answer "No." *Page 706 
6. What damages, if any, is the defendant entitled to recover by reason reason of its counterclaim? Answer:...................
Judgment was rendered in favor of the plaintiff, and the defendant appealed.
The refusal to enter judgment of nonsuit as to the first cause of action to recover damages for burning the wood of the plaintiff was not prejudicial to the defendant as the jury did not answer the third issue and there has been no recovery on this cause of action. There was, however, evidence sustaining this cause of action fit for the consideration of the jury.
The evidence of the plaintiff tended to prove that the wood was burned by the sparks coming from a skidder; that the skidder had no spark arrester or other protection against fire; that there was a large collection of very inflammable matter around the skidder; that the sparks fell from the skidder on this matter and ignited it and was then communicated to the wood, and that the skidder was operated by the defendant, and not by an independent agency, and this brings the plaintiff's case within the principle of Williams v. R. R., 140 N.C. 623; Currie v. R. R.,156 N.C. 422, and many other authorities.
As to the second cause of action for the conversion of 250 cords of wood, the controversy was as to the quantity of wood taken and sold by the defendant, and as, according to its own evidence, it has in hand the proceeds of the sale by it of 19 cords, it must at least account for this much, the jury having found against it on its counterclaim in response to the fifth issue; and the same may be said of the third cause of action on the verbal contract for logging, the plaintiff claiming $50 to be due him under this contract, and the defendant admitting $8.11 to be due and unpaid.
The motion for nonsuit on the fourth cause of action is upon the ground that there is no evidence of a breach of the contract which requires the defendant to furnish the gonola cars to the plaintiff which he procured from the Black Mountain Railroad.
(666) The plaintiff testified that he repeatedly called on the agent of the Black Mountain Railroad company for cars; that the agent would place the cars as often as 20 or 25 times before the fire on the defendant's track that he would then notify the defendant that the cars were placed; that the cars would be used by the defendant for its own purposes; that he complained to the defendant about not getting *Page 707 
cars; that he complained to the Champion Fiber Company and it furnished him twelve cars of which he got only three; that the cars set on the defendant's track at his request were sufficient in number to have hauled the $1,000 worth of wood that was burned before it was burned; that had the cars which he procured been delivered to him that he would have hauled the wood before it was burned, and that the number of cars that he procured was sufficient to have hauled his entire output of wood had they been delivered to him; that the cars so furnished to him by the Black Mountain Railroad Company at his request were all gondola cars, and that he had only gondola cars placed.
The plaintiff also proved by Charley Wilson that he went to the office of the Black Mountain Railroad Company repeatedly and ordered cars for the plaintiff; that the agent would immediately place the cars on the defendant's tracks for the use of the plaintiff, and the defendant would then use them and not deliver them to the plaintiff; that a sufficient number of cars were placed on the defendant's tracks to have delivered all of plaintiff's wood, and that had the cars procured for the plaintiff been delivered to him the 200 cords of wood that were burned could and would have been delivered before they were burned; that all the cars witness procured from the railroad company for the use of the plaintiff were gondola cars.
Plaintiff also proved by Frank Ewing that plaintiff often sent him to the office of the railroad company to order cars; that thereupon the agent would place the cars on defendant's tracks, and the defendant, instead of delivering them to the plaintiff, would use them for its own purposes; that all of the cars witness saw furnished were gondola cars.
Plaintiff introduced the agent of the Black Mountain Railroad Company, who testified that Mr. Walls and his men would order cars and he would place them on the defendants's tracks and notify the defendant they were for this plaintiff; that later he would notice that these cars were billed out by other shippers than the plaintiff.
This evidence, if true, clearly established a breach of the contract to furnish the plaintiff with the gondola cars he procured from the railroad, and the evidence of the defendant to the contrary simply raised an issue to be settled by the jury.
The exception to the charge on the first issue is well taken, the error consisting in imposing the duty on the defendant of furnishing to the plaintiff all gondola cars it received, which could be (667) operated on the track of the Spruce Company, when the contract only required it to furnish the gondola cars the plaintiff procured from the Black Mountain railroad, and the error was upon a vital question as the evidence of the defendant tended to prove that while it had and *Page 708 
used other cars, the plaintiff only procured 18 gondola cars from the railroad, and that these were furnished him by the defendant.
There is also error in charging the jury they could consider the burned wood as an item of damage for breach of contract. Extinguisher Co. v. R.R., 137 N.C. 278.
In the case cited, property delivered to the defendant for transportation was destroyed by fire, not due to the negligence of the defendant, when it would not have been at the place of the fire but for delay in fowarding, and it was held that the defendant was not liable, and the Court said: "The defendant by its failure to ship within a reasonable time became liable for such damages as naturally and proximately resulted from such breach of contract or duty. Lindley v. R. R., 88 N.C. 549.Pearson, J., in Ashe v. DeRossett, 50 N.C. 299, 72 Am Dec., 552 says: `When one violates his contract, he is liable only for such damages as are caused by the breach, or such as being incidental to the act of omission or commission, as a natural consequence thereof, may reasonably be presumed to have been in contemplation of the parties when the contract was made. This rule of law is well settled but the difficulty arises in making its application. In that case a quantity of rice was sent to the mill of defendant's intestate pursuant to a contract that it was to be worked in its `turn.' The rice was not worked in its `turn.' The mill with its contents was thereafter burned. In an action on the contract for failure to have the rice beaten in its `turn' the plaintiff claimed the value of the rice as the measure of the damage to which he was entitled. This Court held that in the absence of any evidence of negligence in respect to the burning of the mill, he was not entitled to recover the value of the rice. The Court said: "There is nothing to show that the contingency that the rice might be burned if left in the mill was in the contemplation of the parties. On the contrary, its being burnt was an accident unlooked for and unforseen, and can in no sense be considered as having been caused by the fact that it was not beat in the turn promised by the defendant's intestate; consequently the damages were too remote.'. . . His Honor should have told the jury that there was no evidence showing that the delay in shipping was the proximate cause of the destruction of the property."
If there has been a breach of the contract it was proper for the jury to consider the loss of profits as an element of damages under the authority of Wilkinson v. Dunbar, 149 N.C. 20, which was denied (668) by a unanimous Court, has been frequently approved and is directly in point.
The fact that the plaintiff testified that he stopped work because the wood has burned was but another way of stating that he would not *Page 709 
continue his work unless the wood was moved, so he would get the proceeds for use, and that the failure to move the wood according to the contract was the cause of the loss of profits.
We have examined the exceptions to the evidence and find them without merit, except we do not think it was material to any issue to prove that the plaintiff sold his camp outfit and tools at half price to enable him to pay his debts, and this evidence had a tendency to prejudice the cause of the defendant before the jury.
New trial.
(669)