## CLARK *vs.* MOORE *et al.*

Although a contract for sale and delivery of goods be entire, and the vendor deliver part only, yet, if the vendee retain such part, the vendor may recover its value in an action for goods sold and delivered.

Clark *vs.* Moore *et al.*

The plaintiff contracted to furnish a certain quantity of goods at prices specified in the contract, and having failed to deliver the whole, sued for the portion delivered to and retained by vendee. On the trial, the only proof of the value of the goods delivered was the prices named in the contract, and the Court charged the jury that although the plaintiffs had failed to complete the contract, they were still entitled to recover the contract prices for the portion delivered. *Held*, that the prices named in the contract, being the only evidence of the value of the goods, the jury, in the absence of other proof, were bound by it, and therefore, the charge of the Court, if incorrect as a rule of law, could not affect the verdict, and was no ground of error.

Where vendors contracted as follows: "F. M. & Co., hereby contract and agree to furnish C. all the tarred and manilla cordage, &c., necessary to rig a vessel said C. is now building at T.," &c., and failed to deliver a part of the cordage &c., in an action to recover for the part delivered, it was held that the designation in the contract of the use to which the materials were to be put, being merely to designate the quantity to be furnished, and not an undertaking that the vendee should have the use of the goods for the purpose specified, that the vendee could only be allowed as damages the difference between the contract price and the market value of the articles.

In actions *ex contractu*, the party complaining can recover such damages only as are shown to be the natural and proximate consequence of the breach complained of, and not such as arise from circumstances so far out of the ordinary course of nature, or human affairs, that they could not fairly be presumed to have been anticipated by the parties at the time of making the contract.

Error to Wayne Circuit Court.

*H. H. Emmons*, for plaintiff in error.

*J. F. Joy*, for defendants in error.

By the Court, DOUGLASS, J.

*Indebitatus assumpsit* brought by Moore & Co. for goods sold and delivered in pursuance of the following agreement:

"F. Moore & Co. hereby contract and agree to furnish Mr. J. P. Clark all the tarred and Manilla cordage, spun yarn, and hamline necessary to rig a vessel said Clark is now building at Truago, at ten and a half cents per pound, (except bolt ropes for making sails,) to be delivered on or before the first day of September next. It is agreed that the said Clark shall

pay one half in cash on delivery, and the balance in six months.    F. Moore & Co..

J. P. Clark.

"Detroit, July 9th, 1846."

On the trial the plaintiffs proved the delivery of materials called for by this contract at sundry times between August 1st and October 29th, 1846, amounting at the contract prices to $437 93.

The defendant proved that this was less than the quantity required to rig the vessel, and that the plaintiffs refused on demand to furnish the residue.

Under a stipulation entered into between the parties that any legal claim for damages arising out of the plaintiffs' non-performance of the contract might be shown in defence, the defendant offered to prove that when the plaintiffs refused to furnish the balance of the materials they had agreed to deliver, the same could not be procured in the Detroit market, but had to be procured elsewhere; that in consequence, considerable delay necessarily accrued in getting said vessel ready for sea, during which time the defendant lost the use of her, and was wholly deprived of the profits which she might have earned, and was thus damaged to a large amount.

But the Court rejected this evidence as inadmissible; to which ruling the defendant excepted.

It does not appear that there was any evidence tending to prove that the defendant had ever returned or offered to return the goods which had been delivered under the contract, or that the plaintiffs had demanded a return of them. Nor was there any evidence except the contract as to their value.

The evidence being closed, the Court instructed the jury that although the plaintiffs might have failed to complete the performance of their agreement, yet they were entitled to recover the contract price for such portion of the materials as had been delivered under it.

To which charge the defendant's counsel excepted, and the ·

8

Clark *vs.* Moore *et al.*

jury having found a verdict for the plaintiffs in conformity with the charge of the Court, the cause was removed to this Court by writ of error and bill of exceptions.

First, as to the instruction of the Court below that Moore & Co. were entitled to recover. Clark was not bound to accept any of the materials contracted for unless the whole were delivered. When after furnishing a portion of them, Moore & Co. refused to deliver the residue, he was at liberty to decline the portion he had received. But there was no evidence that he did so, and the jury were bound to presume that he retained them in silence. This was an acceptance, and the law implies an engagement on his part to pay for them.

The case comes directly within the principle that though a contract of sale be entire, and the seller deliver only a part of the goods bargained for, yet if the vendee retain such part, the vendor may recover the value of the part retained in an action for goods sold and delivered. (*Oxendale* vs. *Wetherell*, 9 *Barn. & Cress.* 386; *Shipton* vs. *Casson*, 5 *Id.* 378; *Bragg* vs. *Cole*, 6 *J. B. Moore*, 114; *Champion* vs. *Short*, 1 *Camp.* 53; *Bowker* vs. *Hoyt*, 18 *Pick.* 555; *Roberts* vs. *Beatty*, 2 *Penn. R.* 63; *Shaw* vs. *Badger*, 12 *Serg. & R.* 275; *Chitty on Contr.* 430; *Story on Sales*, §§ 424, 439.) We are aware that a contrary doctrine may be considered as established in New York by Champlin vs. Rowley, 13 Wend. 258; S. C., 18 Id. 187, and Mead vs. Degolyer, 16 Id. 632, which cases have been recently followed in Ohio in Witherow vs. Witherow, 16 Ohio R. 238, but not without the protest of Justice Read in an able dissenting opinion.

In the two first cases it distinctly appeared, and in the last there was ground for the presumption, that the plaintiff had willfully refused to complete the performance of his contract with the view of profiting by the rise in the market of articles to be delivered. But they go upon the broad ground that the delivery of all the goods was a condition precedent to the payment of the price or value of any part of them, though

such part may have been accepted and retained by the ven-
dee. Such a doctrine may have enabled the Courts of New
York and Ohio to inflict a salutary though somewhat severe
punishment upon the bad faith of the vendor, in each of the
cases referred to, but in a majority of the cases actually aris-
ing to which it is equally applicable, it would lead to mon-
strous injustice. Suppose A contracted to deliver to B 1000
bushels of wheat by a certain day, B agreeing to pay therefor
so much per bushel on or after the day of delivery. A from
time to time delivers wheat to the amount of 900 bushels, but
is prevented by bankruptcy or any other of the ordinary ac-
cidents or casualties of business from delivering the residue.
According to this doctrine, A's failure to deliver B 100 bush-
els works a complete forfeiture to B of the 900 delivered. It
was stated by Lord Tenterden, in Oxendale *vs.* Wetherell, and
admitted by Cowen, J., in Mead *vs.* Degolyer, that this must
be the result. It was apparently the manifest hardship of
such a case which induced the Supreme Court of Ohio to hint
that where an excuse was shown for the vendor's failure to
complete the performance, he might maintain an action for
the goods delivered. But if the delivery of the entire quan-
tity be a condition precedent to his right of action, I imagine
that nothing less than the act of God, of the law, or of the
vendee, could excuse his non-performance of it.

It would occupy too much space to examine the reasoning
of these cases at length. All that need be said of them is,
that they are contrary to the well-settled law of England,
Massachusetts and Pennsylvania, and that the application of
the rule they assert to a majority of the cases which would
fall within it, must shock the moral sense of every man. The
law is best administered when it enforces equity and disables
fraud.

Secondly, as to the charge of the Court that the plaintiffs
were entitled to recover the contract price of the goods deliv-
ered. There is much authority for saying that in cases like

the present, the vendor is entitled to recover the contract price, deducting any damage which the vendee may show he has sustained in consequence of the non-delivery of all the goods. But whether this is so it is not now necessary to determine. In this case there was no evidence before the jury as to the value of the goods, except the contract. This was some evidence, and in the absence of any other the jury were bound by it ; and even if the charge of the Court on this point was incorrect as the statement of the rule of law, it is no ground of error, because a different charge could have had no influence upon the verdict.

Thirdly, as to the rejection by the Court of the proof offered in defence, of damage sustained by said Clark in the loss of the use and profits of his vessel in consequence of the non-delivery by Moore & Co., of all the materials required to rig her.

Had the contract contained no allusion to the use for which the materials were purchased, this evidence would clearly have been wholly inadmissible. It would then have been an ordinary contract for the sale and delivery of goods generally, (to use the phrase employed by counsel,) and it is admitted that the only damage recoverable by Clark for its breach, would have been the difference between the contract price and the market value of the goods at the time and place of the promised delivery.

This is the general rule applied to such contracts, upon the ground that with the market value of the goods, the vendee can supply himself with the same goods from another vendor. (*Sedgw. on Damages*, 260 ; *Story on Sales*, § 412 ; 2 *Greenl. Ev.* § 261.) Cases are constantly occurring in which it falls far short of full compensation for the injury actually sustained by the vendee. But the law sternly and uniformly rejects all claims for damages which the peculiar state of the vendee's private affairs concurred with the vendor's breach of the contract in producing. Such damages are deemed not to be the natural and proximate consequences of the breach,

and therefore not to have been contemplated by parties at the time of making the contract.

But it is contended that this rule is not applicable to a contract for the sale and delivery of goods for a particular purpose, and that for the breach by the vendor of such a contract, the vendee is entitled to recover, not merely the difference between the contract price and the market value, but also special damage resulting to his private affairs, from his not having the goods to use for the particular purpose for which they were intended. This may be so. The rule, though difficult of safe application, seems just and equitable, and it has the sanction of the civil law, and to some extent is sustained by actual adjudications under our system of jurisprudence. But when such special damages are allowed, it must be upon the principle that the vendor's engagement is not merely to deliver the goods, but that the vendee may have the advantage of their use for the purpose specified.

Where such is the real nature of the contract that it may be thus construed, the special damage claimed is the natural and proximate result of the vendor's breach of it, and allowable upon the like principle and to the like extent that damages are allowed for breaches of warranty of the fitness of goods for a particular use, and the like. But it can by no means be true, that every contract which on its face indicates the purpose to which the goods are to be applied, is of this nature. The reference to the use may be made for various purposes. Nor can it be true, as was contended, that a vendor will be liable for such special damages in every case where it appears, even by parol evidence, that the goods were purchased for a particular purpose, and that the vendor knew it. To create such extraordinary liability, there must, in every case, be something in the terms of the contract, read in the light of the surrounding circumstances, which shows an intention on the part of the vendor to assume an enlarged engagement, a wider responsibility than is assumed by the

vendor in ordinary contracts, for the sale and delivery of merchandise.

Now let us examine the contract before us. Clark was building a vessel at Truago, and would require materials to rig her; Moore & Co. were merchants in Detroit, dealing in such materials, and were willing to furnish them; Clark wanted just the quantity which would be required to rig his vessel. This quantity Moore & Co were willing to furnish, be the same more or less, but neither of the parties knew or could then ascertain what that quantity would then be. Had it been known, is there any reason to suppose that they would not have agreed upon and designated it? Being thus unknown and undeterminable, the parties, instead of engaging, the one to sell and the other to purchase a definitely ascertained quantity of cordage, &c., entered into a contract by which Moore & Co. agreed to sell, and Clark to purchase, all the cordage which Clark would require to rig his vessel. The main purpose of the parties in referring to the use which the materials were to be put to, evidently was to designate the quantity of the whole and of each kind to be furnished. I can see no reason to suppose that they had any other object in it—certainly, to my mind, it is quite clear that it does not evince the intention of either of the parties, that Moore & Co. should assume the extraordinary liability claimed on the part of the defendant.

But even if we give the contract the construction and effect claimed for it, still, I am clearly of the opinion that the evidence offered was properly rejected.

No damages are ever recoverable in actions *ex contractu*, unless they are shown by the party claiming them to be the natural and proximate consequence of the breach complained of. Of course, each of the circumstances which concurred with the breach in producing the damage, and without which it would not have happened, is a part of its cause, and if any of these concurring circumstances are so far out of the ordi-

nary course of nature, or of human affairs, that they cannot fairly be presumed to have been contemplated by the parties at the time of making the contract, then the damage is not the natural result of the breach, and is therefore not recoverable.

Now what Clark offered to prove in this case was, that when Moore & Co. refused to deliver the balance of the materials, they could not be procured in Detroit, and that the completion of his vessel was delayed and he lost the use of her during the time necessarily occupied in sending elsewhere to procure them. Admitting these facts, it is sufficiently obvious that Clark's damage resulted not solely from the failure of Moore & Co. to deliver the materials, but also from the peculiar state of the Detroit market. If at the time of the breach he could have procured the materials here, it would have caused him little damage except that which is sustained by the vendee in ordinary cases of the breach of a contract of sale by the vendor, viz: the difference between the contract price and the market value of the materials.

If the absence in the Detroit market of those articles of merchandize which were required to rig vessels was an extraordinary and unusual event, it would obviously be most unjust and contrary to settled principles of law, to hold Moore & Co. responsible for damage which was in part caused by it. The damage thus occasioned would not be the natural consequence of the breach. It could not be presumed to have been foreseen and contemplated by the parties, at the time of making the contract.

If, on the other hand, such a state of the Detroit market was usual and ordinary, and might have been reasonably anticipated at the time the contract was entered into, the defendant should have offered to prove it, for there was no ground for a presumption that this was the case.

The view we have taken on these points, renders it unnecessary to inquire whether with this additional proof, the dam-

age claimed would not have been too remote and contingent to be recoverable even under the construction and effect which the defendant claims for the contract.

It results from these views that there is no error in the record, and that the judgment of the court below must be affirmed, with costs.