## Robert P. Sinclair v. Dennis Murphy.

*Estoppel by contract.*   Where a party received money of a person who was in the lawful possession thereof, and interested therein, and expressly agreed to deposit it to his credit, he is estopped by his contract, in a suit for its recovery brought by said person, from setting up the rights of any third person, or raising any question of partnership.

*Charge of Court, when not cause for reversing judgment.*   When the charge of the Court had no relevancy to the case, or could in no way prejudice the rights of a defendant, judgment will not be reversed, whether the charge was erroneous or not.

*Heard April 7th.   Decided July 11th.*

Error to Kent Circuit.

The facts are stated in the opinion. Judgment was rendered in favor of the plaintiff for $2003.58.

*George Gray*, for plaintiff in error.

1. A dormant partner is he whose name and transactions as a partner are professedly concealed from the world. Samuel Sinclair was not a dormant partner. His absence from the place of business of the firm did not make him one. The question whether a member of a firm is an ostensible, or a secret, a dormant, or a nominal partner, is determined by the contract of partnership, or agreement, as existing between the partners themselves.—*Collyer on Part. p.* 3; 6 *Mich.* 300.

2. Even if Samuel Sinclair could be considered a dormant partner, yet if he were privy to the transaction, or known to the parties therein, he must be joined as plaintiff.—I *Chitty on Pl.* 13; 6 *Pick.* 352; 3 *Cow.* 85; 4 *Wend.* 628.

3. The $1,700.00 was actually deposited with the factors of the firm in Cincinnati, to pay the debts of the concern. This was clearly within the powers and duty of the plaintiff in error as agent of Samuel Sinclair.

It will not be denied but that if Samuel Sinclair was a member of the firm, owning said money jointly with the defendant in error, as co-partner, and if the money had been placed in his hands, as stated, he, Samuel, would have an unquestionable right to do with it as was done. It follows that the plaintiff in error, acting as agent for Samuel, could do the same; because the act of the agent is that of the principal, and the agent can lawfully do, within the scope of his agency, whatever the principal may.—*Dunlap's, Paley's, Agency,* 1; 16 *Johns.* 86.

4. The fact of partnership was one that should have been left with the jury to determine from the evidence, and the court erred in not giving the instructions asked for.

*D. B. Duffield* and *C. I. Walker*, for defendant in error.

1. Samuel Sinclair was but a dormant partner, and, therefore, it was not necessary that he should join in the suit.

14 MICH.—2 I.

Indeed, some of the early decisions hold that a dormant partner cannot be joined.—*Taunt.* 324; 2 *Esp.* 468; 4 *Wend.* 628.

2. But the settled law now is that he may or may not join, at the option of the plaintiff.—*Story Part.* § 241; *Collyer Part.* § 660–61; *Lindley Part.* 338, 389; 1 *Chitty Pl.* 12; 36 *Penn.* 293; 3 *Cow.* 84; 5 *Id.* 534; 8 *Cush.* 406.

3. Dormant partners are those whose names are not known in the firm, or who do not appear as partners; but whether they are known to be partners or not, is quite immaterial, especially where the defendant has dealt with the ostensible partner only.—*Story Part.* § 80; *Collyer Part.* § 4; 3 *Kent's Com.* 31; 11 *Ala.* 603; 2 *H. & Gill,* 159; 5 *Vt.* 116; 5 *Mason,* 186.

4. The defendant received the money sued for from the plaintiff, and still retains it after demand.

In relation to the right of the plaintiff to recover, the testimony tends to prove but two hypotheses:

*a.* That Samuel Sinclair was not a partner with the plaintiff in the sutlership after the 26th day of April, 1862, and that consequently the money belonged to him individually.

*b.* That after that date Samuel Sinclair still continued his interest in the business, but was a dormant partner, taking no part in it, and his name not known therein. The money, in such case, belonged to the firm.

In either case the plaintiff was entitled to recover, in the first, as sole owner; in the second, as ostensible partner.

As between him and his partner, his rights would be the same in either case. He suffers no wrong if the plaintiff succeeds, for the plaintiff must account with him.

But the question cannot be raised by the defendant.

COOLEY J.

From the record it appears that Murphy sought to recover against Sinclair, in the Court below, for certain moneys which the latter had received from him and failed to dispose of

according to the understanding between them. It appeared that the plaintiff (below) and Samuel Sinclair, a brother of the defendant, had been in partnership as sutlers to the fourteenth regiment of Michigan Infantry, of which the defendant was Colonel; that in April, 1862, when the regiment was in Tennessee, Samuel Sinclair left for his home in Michigan, and did not afterwards return, and the plaintiff thereafter carried on the business in his own name, claiming to have bought out Samuel Sinclair's interest; that in August, 1862, plaintiff was sick and in the hospital at Tuscumbia, Alabama, and one Walsh had charge of the business as clerk; that defendant applied to Walsh to have the moneys then on hand, and in possession of plaintiff, delivered to him that he might send it to Cincinnati for safe keeping; representing that it was not safe to keep it where it then was; that defendant and Walsh went together to the hospital, where similar representations were made to the plaintiff,—the defendant stating that it would probably be some weeks before the plaintiff would be able to attend to business; that plaintiff, at the solicitation of defendant, consented that $1700 should be deposited with defendant, to be sent to Cincinnati, and to be there subject to plaintiff's order; that Walsh delivered defendant that amount accordingly, and that defendant, when subsequently inquired of whether he had made the deposit as agreed, claimed the money as his own. Other small sums of money were also deposited by Walsh with defendant, which he refused to repay.

The defendant introduced evidence tending to show that plaintiff and Samuel Sinclair had never dissolved partnership, and that the latter had not consented to the change by which the business was being conducted in the name of the plaintiff alone. Also, that Samuel Sinclair had requested him to look after said Samuel's interest in said sutler's business, and see that it was taken care of, and that the moneys so received by defendant belonged to said business.

On this evidence the defendant asked of the Circuit Judge

various charges as to who were to be considered dormant, and who ostensible partners; and as to the necessity of all partners uniting in bringing suit in respect to the joint business; and the errors assigned in the case, with one exception, arise upon the charges made by the Circuit Judge upon these points.

We do not see how the question of partnership can be open to defendant, on the case appearing here. The fact that the plaintiff was carrying on the business in his own name, was not disputed, nor was it denied that defendant received the moneys from him on the distinct understanding that they should be placed to the plaintiff's credit. The dealing of the defendant was not with any partnership, but with the plaintiff as an individual; and having agreed to account for the moneys to the plaintiff, he cannot be permitted to retain them in violation of this understanding, while the plaintiff litigates with him the right of some third person to an interest therein,—a right in which the defendant is in no way concerned. Whether Samuel Sinclair still continued a partner or not, would be immaterial in any controversy between the plaintiff and mere wrong-doers; for having the rightful possession of the property as well as an interest in it, he would be entitled to maintain his possession against any one asserting no right in himself; and there can be no doubt that this possession and interest would be ample consideration to support the promise of any one who, on receiving any of the property from him, should promise to return it. Defendant does not claim to have acted on behalf of Samuel Sinclair in obtaining this money; nor does his testimony show that his agency would have warranted any interference in the business. As to the dealings between the plaintiff and Samuel Sinclair, the defendant was, in law, a stranger; and he has no right to draw them into controversy for the purpose of defense to his own contract. And there was some evidence tending to show that this defense was entirely an afterthought; his first claim being that the money was his own. But if he intended to set up any such claim when he obtained the money, we think he is

as much estopped by his representations and promises from doing so, as the receiptor of property levied upon is estopped from setting up a claim to it in opposition to his receipt.

We do not think the charges of the Circuit Judge had any relevancy to the case, or could in any way have prejudiced the defendant; and whether erroneous or not, the judgment should not be reversed for the errors assigned.— *Clark v. Moore*, 3 *Mich.* 55 ; *Cummings v. Stone*, 13 *Id.* 70.

The Judge was also asked to charge the jury that, if the moneys deposited in the hands of the defendant belonged to Samuel Sinclair and the plaintiff, as partners, and that defendant was agent of Samuel Sinclair, the defendant could lawfully do with the money, as such agent, whatever Samuel Sinclair could do. To make this request relevant, the defendant should have put in evidence tending to show his agency; but as nothing of the kind appears, and he did not assume in any way to be acting as agent when he obtained the money, or when he refused to account for it, we think the Judge should have declined to give any instruction upon the point.

The judgment of the Court below should be affirmed, with costs.

CHRISTIANCY J. and MARTIN CH. J. concurred.

CAMPBELL J.

I think there was testimony enough in the case to make the various charges and refusals to charge complained of pertinent. There was no dispute about the original existence of a partnership between Murphy and Samuel Sinclair, which must therefore be presumed to exist until dissolved. There was no dispute but that the money received by Robert P. Sinclair belonged to the business of the partnership, if any such partnership existed at the time. Whether the firm continued, was, upon the evidence, an open question for the jury. There was evidence, which they might have been disposed to credit, that R. P. Sinclair was authorized to act for his brother, and was

looking after his interests, and it was a question for the jury whether Samuel Sinclair knew that his name had been dropped by Murphy, in continuing the business. If such a partnership continued, and money was put into R. P. Sinclair's hands, under the circumstances alleged in the bill of exceptions, I think he would not be responsible for it to Murphy alone; but that he would be liable to the firm. It cannot be seriously contended that the charges given were correct as legal propositions; and, as they seem to me not foreign to the case, I think the judgment should be reversed, and the case remanded for a new trial.