A. F. YOUNG & CO. *v.* GRAND RAPIDS & INDIANA
RAILWAY CO.

1. CARRIERS—DELAY IN TRANSPORTATION—EVIDENCE—USUAL TIME.
   In an action by a shipper against a railroad company for
   damages by frost to potatoes shipped in the winter time,
   as bearing upon the question of unreasonable time in
   moving cars to their destination, it was competent to show
   the actual time consumed as well as the usual time re-
   quired and taken for such transportation.

2. SAME—NEGLIGENCE—REASONABLE DILIGENCE.
   It is the general rule that it is the duty of a common
   carrier to safely transport goods, properly prepared for
   shipment and in good condition, accepted by it for that
   purpose, to their destination safely and with reasonable
   dispatch.

3. SAME—UNUSUAL CONDITIONS—DEFENSES — BURDEN OF PROOF —
   EVIDENCE.
   If unusual conditions prevent the carrier from performing
   its duty, resulting in damage, the burden of proof is upon
   the carrier to show that its negligence did not cause, or
   contribute to, the loss or injury.

4. SAME—NEGLIGENCE—EVIDENCE—STATUTE.
   If unreasonable delay in shipping the goods was shown,
   their condition on arrival at destination might fairly raise
   the question, in the absence of any proof by defendant,
   whether the carrier exercised that degree of care required
   by section 8176, 2 Comp. Laws 1915.

Error to Kent; Barton, J., presiding. Submitted
October 15, 1917. (Docket No. 135.) Decided March
28, 1918.

Assumpsit by A. F. Young & Company against
the Grand Rapids & Indiana Railway Company for
breach of a contract to transport certain potatoes.

Judgment for defendant on a directed verdict. Plain-tiff brings error. Reversed.

*Eastman & Eastman,* for appellant.

*James H. Campbell (Elvert M. Davis,* of counsel), for appellee.

STEERE, J. On January 2 and 4, 1912, plaintiff loaded and shipped on defendant's line two carloads of potatoes from Brutus, Emmet county, Michigan, to its agent Joshua A. Cave, at Charleston, S. C. Each car contained 220 sacks, weighing about 165 pounds each, of seed potatoes, known as "Irish Cobblers." They were raised by farmers near Brutus at so much per bushel, from seed furnished by plaintiff, to be de-livered to plaintiff's agent in Brutus, from whence they were to be shipped by plaintiff for seed on its plantation in South Carolina.

Plaintiff introduced testimony tending to show that the sacks containing these potatoes were heavy bur-lap, weighing 2 1-2 to 3 pounds each, that the potatoes were carefully sorted and all defective, unclean or un-sound ones rejected; that they were shipped in re-frigerator cars which were well heated by stoves placed in them and a hot fire maintained for 48 hours until all moisture was dried out and the heat had thoroughly penetrated the double sides and floor of the refrigerator cars used, which had been lined with two coats of heavy paper on the bottom, sides, ends, ceiling, and inside of the doors, straw being placed on the bottom six inches thick and packed between the sacks and walls, the stoves being kept or replaced in the car after it was loaded and a good fire again started and maintained in them with closed doors for some time, when they were finally removed and the cars quickly closed, caulked, sealed and delivered in that condition to defendant for transportation; that

this was carefully done by a man of long experience, according to approved methods of preparing and loading cars of potatoes for shipment at that season of the year, and refrigerator cars, which have double walls packed with insulated paper and felt to keep out cold, so treated would hold the artificial heat from 48 to 72 hours.

An offer, or attempt, to prove the custom in regard to loading and shipping cars of potatoes from Michigan to points outside the State during the winter months was ruled out on defendant's objection, the court saying, "That is not material. * * * The question is what they did." Testimony of two witnesses experienced in handling and shipping potatoes to southern points, introduced against objection, showed that the usual time, under ordinary winter conditions, for moving such freight between Brutus, Michigan, and Charleston, S. C., is from six to seven days, but this testimony was all subsequently stricken out on defendant's motion.

Plaintiff's agent, Cave, was notified of the arrival of the cars at Charleston on the 17th of January, 1912. He paid the freight, amounting to $400.95 and at once went to the cars and inspected the potatoes sufficiently to ascertain some of them were frozen, some wet and some rotten, and he notified the railroad agent, refusing to accept the shipment until he had notified plaintiff and received instructions, when he was directed to dispose of them to the best advantage. He then had them unloaded, hauled to a warehouse, spread out upon the floor and sorted. He found them unfit for planting purposes and sold what were saleable for table use at the best price obtainable in Charleston, the two carloads netting $1,204. A dealer in Charleston, who was familiar with the potato business and had handled them in large quantities, testified that he examined these carloads after they were

spread out and assisted in disposing of them, saying, "some were wet, evidently frozen, some were rotten. Out of the two carloads about 35 bags were absolutely worthless. The balance was then sold for table use at the best price obtainable. We made no charge for our services." At that time Irish Cobbler potatoes suitable for seed purposes sold on the Charleston market for $5.06 per bag of 165 pounds or $4.60 per 150 pound sack, which was the price paid by plaintiff to replace these for planting. The testimony which plaintiff had introduced as to the usual time, under ordinary winter conditions, for moving potatoes by rail from Brutus to Charleston was stricken out on defendant's motion after plaintiff had rested, followed by a motion for a directed verdict which the court indicated would be granted, when plaintiff moved for leave to introduce certain depositions in the case, taken by defendant, to show, among other things, various delays of those cars while en route, which was denied on defendant's objection that plaintiff had rested. Defendant offered no evidence, and the court granted its request for a directed verdict in its favor on the ground that plaintiff had failed to make out a *prima facie* case.

Conceding that the admission of the depositions after plaintiff had rested was discretionary with the court, striking out plaintiff's evidence as to the usual time of carrying such freight to its destination was not. The testimony showed that both witnesses had years of practical experience in shipping potatoes south in the winter from Brutus and its vicinity to as far as Charleston, and beyond, and knew by experience the usual running time under ordinary winter conditions. The main objection interposed to this line of inquiry was that it did not include the condition of weather and other possible causes of delay existing when the cars were in transit and of which the wit-

nesses admitted they did not have knowledge. Of this it may be said there was no direct proof in the case of unfavorable transportation conditions or unusual weather for the time of year during the movement of those cars south, nor was such to be presumed. Its assumption by defendant in interrogation and argument was not evidence. If such was the case it was matter of defense. As bearing upon the question of unreasonable time in moving the cars to their destination, it was competent to show, not only the actual time consumed in the particular case, but the distance and usual time required and taken for such transportation. *Loveland & Hinyan Co.* v. *Waters*, 192 Mich. 680.

While the right to make contracts upon the subject, not in violation of law, and certain excusing exceptions are recognized when proved, the general rule obtains in this State, as elsewhere, that the duty of a common carrier is to safely transport goods, properly prepared for shipment and in good condition, entrusted to and accepted by it for that purpose, to their destination safely and with reasonable dispatch. If unusual conditions cause unavoidable delay, preventing the performance of that duty, with resulting damage, the burden of proof is not upon the shipper to negative the exception, but rightfully rests with the carrier, who is in possession of the goods and best knows the facts, to show that its negligence did not cause, or contribute to, the loss or injury.

Defendant cites and urges as conclusive here *Michigan Cent. R. Co.* v. *Burrows*, 33 Mich. 6, and *Lardie* v. *Railroad*, 192 Mich. 77, which, it is pointed out, "place freezing in the class of events termed the 'act of God' " and say,

, "We believe it is the law in this State that freezing, not shown to be caused by the negligence of the carrier, is recognized as an exemption."

In the present case it was shown that clean, sound, selected potatoes, in good condition for shipment, were properly loaded at Brutus with careful preparation for safe transportation at that season of the year, in refrigerator cars which had been properly prepared, heated, closed, and sealed, and promptly started South, where they would presumably soon encounter a milder climate and warmer weather. The actual time between their departure and notice of arrival at their destination was shown, but plaintiff was not permitted to show the customary and usual time taken for such transportation, nor, with it unexpectedly excluded, to introduce defendant's depositions relating to the subject. It was shown, however, that those potatoes, delivered to the carrier at the point of shipment in good condition and properly loaded for transportation at that season of the year, arrived at their destination in bad condition, not only some of them frozen, but some wet and some rotten so that about 35 bags were utterly worthless. If unreasonable delay in dispatching the shipment was shown, the condition of the goods on arrival at their destination might fairly raise the question, in the absence of any proof by defendant, whether the carrier exercised that "degree of care in the transportation and safe-keeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own," which is the indicated statutory requirement. Section 8176, 2 Comp. Laws 1915.

While the goods being transported in the two cases cited were injured by freezing, and certain language found in the discussion may lend color to some of defendant's contentions, the directly pertinent and controlling questions there decided under the facts proven do not directly apply to the facts shown or decide the questions raised in the instant case. The *Burrows Case* was decided before the law as to liability for

negligence of a connecting carrier was changed by the interstate commerce law, and was reversed squarely on the ground that proof that the negligent delay charged, without which injury would not have occurred, was that of a subsequent carrier furnished a complete defense to an action seeking to hold the first carrier responsible.  In the *Lardie Case,* which was foreign to that question, certain language is quoted from the *Burrows Case,* indicating the carrier may not be liable for damage from freezing even if there was unreasonable delay, but the judgment on directed verdict for plaintiffs was set aside because it was shown that the shipper had plainly assumed the freezing risk, and requested a common box car in preference to waiting for a refrigerator car which had been ordered but could not then be gotten, had told the station agent not to put any stove in the box car when spoken to about it, and the bill of lading showed a "box car loaded with perishable freight at shipper's request and shipper's risk," the controlling reason for the reversal being thus stated:

"They (plaintiffs) might have waited for a refrigerator car, but preferred to use a box car and excuse the carrier from liability for the danger to which the shipment would be subject under those conditions.  They were not obliged to accept this car or none.  Though the parties contemplated the possibility of a freezing, that fact did not make it the natural consequence of the breach of the contract by unreasonable delay.  Even if it had, the plaintiffs have expressly absolved the carrier from liability for the consequence of freezing."

The points upon which those cases turned and were rightfully decided have but remote application and are not controlling in this case, where it is evident, from the course the trial took, with defendant standing upon objections and plaintiff precluded from introducing

competent testimony, that the merits of the controversy were but partially developed.

For the errors pointed out the case is reversed and a new trial granted, with costs to plaintiff.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.