RANDALL v. DETROIT & MACKINAC RAILWAY CO.

CARRIERS—NEGLIGENCE—DAMAGE BY FROST—RELEASE FROM LIABILITY—EFFECT.

> Where plaintiffs, potato buyers, accepted a box car in which to make a shipment of potatoes, because at that time a refrigerator car was unavailable, and signed a release of defendant from liability for freezing, defendant could not

On duty of carrier to carry perishable goods in refrigerator cars, see note in 10 L. R. A. (N. S.) 317.

On duty of carrier to protect goods in transit from freezing, see note in 39 L. R. A. (N. S.) 645.

be held liable for damage by frost, in an action therefor, although plaintiffs alleged that said damage was caused by unusual delay in transportation and delivery, since said damage by frost was within the contemplation of the parties when the release was signed. *Lardie* v. *Railroad Co.*, 192 Mich. 77.

Error to Bay; Houghton (Samuel G.), J. Submitted October 21, 1920. (Docket No. 87.) Decided December 21, 1920.

Assumpsit by Charles L. Randall and others, copartners as C. L. Randall & Company, against the Detroit & Mackinac Railway Company for damages to certain potatoes in transit. Judgment for plaintiffs. Defendant brings error. Reversed.

*Henry & Henry*, for appellant.

*W. B. Henry*, for appellees.

SHARPE, J. Plaintiffs, who are copartners, were engaged in buying and selling potatoes in the fall of 1917. They operated at more than 50 stations, 9 or 10 of which were on defendant's railroad. Louis C. Freidrich was their buyer at Rogers City. The car involved in this suit was loaded and shipped on November 10, 1917. It contained 900 bushels. Defendant was unable at that time to furnish a refrigerator car, and an ordinary box car was used. A false floor of lumber was put in it and double thicknesses of heavy building paper were laid over the bottom and sides of the car. Mr. Freidrich, as agent for the shipper, P. B. Glaspie, signed an order bill of lading consigning the car to "C. L. Randall; notify, New York & New Jersey Produce Co., destination, Hoboken; route, Erie Despatch and H. & M. delivery." Before signing, a release from freezing was stamped upon

the face of the bill of lading, in red ink, reading as follows:

"For valuable considerations by me received and acknowledged, the Detroit & Mackinac Railway Co., is hereby relieved of liability for loss occasioned by heat or frost when shipment is transported in ordinary box cars, between points where no refrigerator or heated car service is operated."

In addition to the above release, the shipper, by Mr. Freidrich, signed the following request for and acceptance of the box car, which was attached to the shipping order:

"In consideration of the acceptance of this shipment for transportation, and anticipating the possibility of damage because shipment is transported in an ordinary box car, the carrier is released from all liability for loss or damage from freezing, heating or other cause due to shipment being handled in an ordinary box car. Carrier has offered to furnish refrigerator service when possible, this shipment is made however in a box car at shipper's especial request."

The following notice, prepared by defendant, was posted in the waiting room of the defendant's depot at Rogers City:

"Detroit & Mackinac Railway Co.
"Car Service Department.
"Circular No. 341

"All Agents:
"On and after November 1st, box cars will not be placed for potatoes, apples and vegetables, except under the conditions shown herein. Refrigerator cars will be furnished when available.

"Should shippers desire to accept and load box cars on and after November 1st, the shipper must assume responsibility for protection of the freight and release the carriers by signing the release, a copy of which is attached. When this release is signed it will be attached to your shipping orders and placed on file. Endorse on way bills 'Protective Service Assumed by Shipper.'

"Our rules require shippers to provide stoves and send man in charge of refrigerator cars loaded with potatoes, apples and vegetables after November 1st. If shippers do not wish to furnish this protective service, you will insist upon the shipper filling out the release on Form 389 before accepting the shipment, attach the release to the shipping order, and place on file.

"We will furnish additional copies of box car releases on application. You should have a supply of Form 389 on hand, or a supply can be obtained from the General Superintendent's Office.

"(File T 12-3)

"C. A. PINKERTON,
"Superintendent of Car Service.
"East Tawas, Michigan.
"October 30, 1917."

The car left Rogers City at 2:20 p. m. of the same day it was loaded. It arrived at the North Bay City yard, defendant's southern terminal, on November 12th at 5 a. m., having traveled a distance of 155 miles. The car was turned over to the Pere Marquette railroad at 3 p. m. of the same day and forwarded according to the routing direction, reaching Weehawken, New Jersey, on November 19, 1917. A notice of the arrival of the car was sent by mail to Mr. Randall, the consignee, on November 22d, and one to the New York & New Jersey Produce Co. (the party to be notified), on November 28th. A diversion order was received by the agent at Weehawken on December 4th and the car moved, pursuant thereto, two days later, to 28th street, New York City, where it arrived on December 12th. Notice of arrival was given to the produce company on the day following. Unloading was begun on the 15th and completed on the 19th. Inspection on the 13th by one of plaintiffs revealed the fact that the potatoes were badly frozen. Plaintiffs brought suit against the defendant as the initial carrier for damages on account of loss occasioned by such

freezing, due to the unusual delay in transportation and delivery, and recovered a judgment for $935.44, from which the defendant appeals.

The defendant requested the court to direct a verdict in its favor for the reason, among others, that the release from freezing, signed by plaintiffs' agent, exempted the defendant from the liability for which recovery is sought. Error is assigned on the refusal to give such request. Defendant insists that it should have been given under the rule of law applicable to such a release, stated by this court in *Lardie* v. *Railroad Co.*, 192 Mich. 77. While the facts were somewhat different, the language employed in that opinion seems squarely decisive of the question here presented. Mr. Justice KUHN, speaking for the court, said:

"Counsel contend that it is the settled rule in this State that a carrier is not liable for damages to freight caused directly by an act of God, notwithstanding a negligent act or omission of the carrier concurred to cause the damage. Such has been the decision in numerous cases where the immediate cause of the injury was a sudden and unforeseen event, occurring after a delay in transportation." (Citing many cases.)

After discussing the question whether the danger of freezing was contemplated by the parties and the effect thereof, and quoting from *Michigan Cent. R. Co.* v. *Burrows*, 33 Mich. 6, and *Clark* v. *Moore*, 3 Mich. 62, it is further said:

"The plaintiffs contend that this indorsement (release on bill of lading) did not relieve the carrier of the duty to use ordinary care, and assert that it failed in this duty by its delay and (by implication) its failure to put a fire in the car. It is the general rule that a carrier may not exempt himself wholly from liability for his negligence, but can limit his liability only by stipulations which are in themselves just and reasonable. (Citing authorities.) But the stipulation in this contract does not attempt to relieve from liability for negligence. It relieves from liability for a loss

which the parties contemplated might be caused by an element beyond the control of both parties, wholly unrelated to any act or omission of the carrier. * * *

"The right of the carrier to limit his liability has been restricted on the ground that he might otherwise place the shipper in the plight of either not being able to ship his goods or having to accept an unreasonable limitation of the carrier's liability for negligence. But the plaintiffs were subjected to no such choice. They might have waited for a refrigerator car, but preferred to use a box car and excuse the carrier from liability for the danger to which the shipment would be subject under those conditions. They were not obliged to accept this car or none.

"Though the parties contemplated the possibility of a freezing, that fact did not make it the natural consequence of the breach of the contract by unreasonable delay. Even if it had, the plaintiffs have expressly absolved the carrier from liability for the consequences of freezing. There being no evidence that the plaintiffs suffered any damage as the natural and proximate result of the defendant's alleged breach of the contract, a verdict should have been directed in favor of the defendant."

We have quoted thus fully from this opinion in view of the claim made by plaintiffs' counsel that, in effect, it is in conflict with, if not overruled by, *Young & Co.* v. *Railway Co.*, 201 Mich. 39. The latter case depended upon an entirely different state of facts. There was no release of liability on account of freezing involved in that case. Its reversal was on account of an error of the trial court in refusing to permit plaintiffs to show that the delay in transportation was unusual. While the views expressed may be said to be in conflict with what was said by Mr. Justice KUHN in the opening sentence of his opinion as to the settled rule when an unforeseen event produces the damage complained of, it in no way questions the soundness of the reasoning applied to such a release or the conclusion reached as to its legal effect. In fact, the gist of the

opinion in that respect is quoted approvingly in the *Young Case.*

We, therefore, feel constrained to hold that this case is ruled by the *Lardie Case.* The judgment is reversed and a new trial ordered, with costs to defendant.

Moore, C. J., and Steere, Brooke, Fellows, Stone, Clark, and Bird, JJ., concurred.