MISSOURI PACIFIC RAILROAD COMPANY v. KING.

Opinion deivered February 9, 1925.

1. APPEAL AND ERROR—HARMLESS ERROR.—Appellant cannot complain that the verdict for appellees is for a less amount than the evidence warranted.

2. CARRIERS—EXEMPTION FROM LIABILITY.—In an action against a carrier for loss of cattle which escaped from a defective loading pen, it is. no defense that the bill of lading stipulated that the shipper should assume liability for feeding, watering and caring for the cattle while in the yards, cars or pens; the loss complained·of having occurred before the bill of lading was issued.

3. CARRIERS—EXEMPTION FOR DELAY CAUSED BY STRIKE.—To avail itself of a clause in a bill of lading exempting it from liability for delay caused by a strike, the carrier must establish that the strike caused the particular delay.

Appeal from White Circuit Court; *E. D. Robertson,* Judge; affirmed.

*Thos. B. Pryor* and *H. L. Ponder,* for appellant.

The carrier did not assume any liability until the live stock had been delivered to and accepted by the company for immediate shipment. 69 Ark. 150. The company only became liable for damage to the cattle after they were loaded on its train and bill of lading issued. 82 Ark. 469; 83 Ark. 502; 50 Ark. 397; 56 Ark. 424.

*John E. Miller,* for appellee.

The failure of the agent of the appellant to notify the shippers that there was a strike of the employees, which made it impossible to promptly deliver the cattle, rendered the appellant liable. 101 Ark. 289; 88 Ark. 138; 63 Ark. 331. The liability of the carrier for stock to be transported over its lines commences when the animals are placed in the usual place for receiving them for shipment. 83 Ark. 502; 68 Ark. 218; 79 Ark. 470; 82 Ark. 353; 101 Ark. 289; 132 Ark. 37. It is the duty of the railroad company to keep its stock yards in a reasonably safe condition. 75 Kan. 295; 10 L. R. A. (N. S.) 571; 89 Pac. 683; 15 A. L. R. 200.

McCULLOCH, C. J. The two appellees, Jess King and Fred King, each instituted a separate action against

appellant to recover the value of cattle which escaped from the pens at Bald Knob, where the cattle had been placed for shipment, and also to recover damages for delay in the shipment of the remainder of the cattle.

It was alleged that, on account of the insecurity of the pens, the cattle escaped, and that one of the appellees, Jess King, lost five of his cattle, and that Fred King lost four. It was also alleged that there was a delay of more than twenty-four hours in the transportation of the remainder of the cattle, and that each of the appellees sustained loss on account of the shrinkage in weight and consequent loss in value. Negligence of appellant is alleged in furnishing insecure cattle pens. The allegations of negligence were denied by appellant, and there was also a plea that the delay was caused by a strike of appellant's employees, and that the bills of lading issued to appellees exempted the carrier from loss or damage resulting from delays caused by strikes of employees. The two cases were consolidated, and the trial resulted in a verdict in favor of Jess King for $100, and in favor of Fred King for $40.

The evidence adduced by appellees tended to show that the cattle which were lost were of the value of twenty to twenty-five dollars per head, and that the loss of Jess King for shrinkage in weight amounted to the sum of $115.89, and that the loss of appellee Fred King amounted to $49.65. The case was submitted to the jury on the question of liability, both for the alleged negligence in furnishing an insecure cattle pen and for the alleged negligent delay in transportation. It is impossible to determine upon which phase of the case the verdict of the jury was based, as the verdict might have been upon either phase of the case, so far as the amount is concerned. The recovery by Jess King was for $100, which might have been solely on account of the loss of five head of cattle at twenty dollars per head, or the verdict might have been for that much of the claim for shrinkage in weight. It is evident that the jury based its verdict in favor of Fred King on the shrinkage in

weight of the cattle, but the amount recovered was not for the full amount which the evidence showed he lost. The fact that the verdict is for a less amount than the evidence warranted, and may appear to be inconsistent on that account, does not call for a reversal, for the appellees are not complaining. *Sledge & Norfleet Co.* v. *Mann,* 166 Ark. 358. The situation, however, calls for a consideration of each of the phases of liability asserted by appellees, and, if there is any error on either branch of the case, a reversal must result.

It is contended by counsel for appellant that there is no liability for the escape of the cattle because the bill of lading contained a stipulation that the shipper should assume the risk of feeding, watering and otherwise caring for the cattle while in the yards, cars or pens, and load the same at his own expense and risk. The answer to this contention is that the loss on account of the escape of the cattle occurred before the bill of lading was issued, and therefore the exemption from liability does not apply. *St. L. S. F. Ry. Co.* v. *Pearce,* 82 Ark. 353; *St. L. I. M. & S. Ry. Co.* v. *Jones,* 93 Ark. 537.

It is next contended that appellant is not liable as a carrier for the reason that the cattle had not been accepted for immediate shipment and that its liability would only be as a depository or bailee. It is sufficient, for the purpose of the case, to answer this contention by saying that the court did not submit the issue to the jury upon the liability of appellant as a public carrier, so far as concerns the escape of the cattle, but the instruction merely submitted the question of negligence in furnishing insecure pens and thus permitting the cattle to escape. In other words, the court submitted the question of ordinary care, and not the question of liability of appellant as a public carrier.

There was evidence sufficient to warrant a finding that appellant was negligent in furnishing an insecure place for the shippers to use in turning in the cattle for immediate shipment. The evidence shows that the fastening on the gate was insecure, and that appellant's

agent was notified of the insecure fastening and requested to furnish a lock with which to fasten the gate.

On the other branch of the case the only contention made is that, under the undisputed evidence, the stipulation of exemption from liability on account of strikes furnished a complete defense. That question was submitted to the jury on proper instructions, and we do not think that the evidence shows that the delay was caused on account of a strike, at least it cannot be said that the undisputed evidence is to that effect. There was a delay of twenty-four hours at Bald Knob, the point of shipment. There was a train due about nine o'clock in the morning of August 19, which might have carried the carloads of cattle shipped by appellees, but the cars were not, in fact, taken out until about the same hour on the morning of August 20. This delay is not explained, except by the general statement of one of appellant's witnesses that there was a strike of employees which interfered with schedules. There was no testimony introduced tending, directly, to show that the delay in this instance was caused by a strike. It was not sufficient merely to show that there was a disarrangement of schedules, but, in order to take advantage of this exemption, it devolved upon appellant to show that the particular delay was caused by a strike.

Our conclusion is that there was evidence to sustain liability on either branch of the case, and that the issues were properly submitted to the jury. Affirmed.