**PETER CONDAKES COMPANY, INC., Plaintiff-Appellee,**

v.

**SOUTHERN PACIFIC COMPANY et al., Defendants-Appellants.**

**Nos. 74–1606, 74–1607.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1975.

Decided March 27, 1975.

---

1142

Anna M. Kelly, Chicago, Ill., for appellant.

Melvin S. Cahan, Chicago, Ill., for appellee.

Before HASTINGS, Senior Circuit Judge, SWYGERT and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff is a wholesale dealer in perishable produce and is located in Boston, Massachusetts. It sued the Penn Central Transportation Company, the delivering railroad, to recover the market loss it suffered on 21 separate carload shipments of perishable produce moving from various points in California, Arizona and Florida to plaintiff in the Boston area. The complaint was filed under Section 20(11) of the Interstate Commerce Act (49 U.S.C. § 20(11)). Plaintiff claims that it suffered a market loss on each shipment because defendant did not transport them "with reasonable dispatch and due diligence." Some $9500 in damages were claimed on the ground that the going price on the Boston market on the day the goods were allegedly due was higher than on the day they were actually available for sale.

In March 1973, the Southern Pacific Company, the Seaboard Coast Line Railroad Company and the Florida East Coast Railroad Company were named additional defendants. However, the claims involving the latter two railroads were settled for some $1600. Therefore, those defendants and the eight shipments they handled were dismissed. The remaining thirteen shipments were of lettuce, carrots and grapefruit from California and Arizona to Boston and were accepted by defendant Southern Pacific Company as the initial carrier and delivered by Penn Central as the delivering carrier.

As to the thirteen shipments still in the case, plaintiff moved for summary judgment. In support of its motion, plaintiff relied on the admission of certain facts by Southern Pacific and Penn Central and an affidavit of Richard Watson, plaintiff's traffic agent, which attached various price quotations from the United States Department of Agriculture's *Fresh Fruit and Vegetable Market News* (Boston Report). According to a chart attached to Watson's affidavit, the total loss due to delay was $5,703.16.

Penn Central filed an opposing affidavit of Donald R. Steinman, a senior claim account representative, asserting that the applicable tariff permitted carriers a 24-hour cushion for paying market claims.[1] Steinman's affidavit also stated that the applicable perishable freight schedules provided for a normal traveling time from California to Boston market of eight days from the date of shipment. Plaintiff does not contest the eight-day travel time. Consequently, according to Steinman, none of the shipments in question was unduly delayed except for one involving an alleged $351.51 loss on carrots shipped from Coachella, California, to Everett, Massachusetts. As to this shipment, Steinman asserted that the four-day delay was due to a strike on the originating carrier, Southern Pacific Company. He added that the contract terms of the bill of lading prohibit liability against a carrier where time is lost on account of a strike.[2] In addition to the grounds contained in Steinman's affidavit, the Penn Central opposed summary judgment on the ground that no proof of the market value of the goods involved had been presented.[3]

In an unreported memorandum opinion and order, the district court entered summary judgment against defendants in the amount of $5,703.16, which was the amount claimed in the chart accompanying the affidavit supporting plaintiff's motion for summary judgment. The district judge noted that plaintiff was complaining that defendants did not transport its commodities "with reasonable dispatch,"[4] so that the plaintiff

---

1. The pertinent provision, Note 2 of this tariff, provides as follows:

    "Delay for market decline purposes shall be deemed to exist only if placement occurs more than 24 hours later than the time scheduled to elapse between origin tender and destination placement, unless carrier has evidence to establish that the delay in delivery of the shipment is attributable to causes other than carrier negligence."

2. Section 1(b) of the bill of lading provision relied on by Steinman provides:

    "Except in the case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be for the carrier or party in possession), the carrier or party in possession shall not be liable for * * * delay occurring * * * from riots or strikes."

3. Steinman's affidavit does not explain the two-day carrier delay resulting from an August 5, 1968, shipment of grapefruit from Somis, California, to Chelsea, Massachusetts, originating on the Southern Pacific and involving a claimed loss of $1,084.65. In its reply brief in support of its motion for summary judgment, plaintiff noted that the Penn Central did not resist summary judgment with respect to this shipment. However, if valid, the second ground of Penn Central's reply to the plaintiff's motion for summary judgment, *viz.*, that no proof of the market value of plaintiff's goods had been presented, would apply to this shipment.

4. Section 2(a) of the Uniform Bill of Lading provides:

    "No carrier is bound to transport said property by any particular schedule, train, vehicle or vessel, or in time for any particular

missed the benefit of the market upon the day when, according to defendants' operating schedules, the commodities should have been available for sale. See Condakes v. Southern Pacific Co., 295 F.Supp. 121 (D.Mass.1969).

As to the carrier's contention that eleven of the thirteen shipments were timely because of the one-day grace period allowed by Note 2 of the freight tariff (see note 1, *supra*), the district court invalidated this tariff provision because Section 20(11) of the Interstate Commerce Act provides in part " * * * no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability imposed." The opinion noted that subsequent to its 1970 approval of this tariff, the Interstate Commerce Commission now holds that such 24-hour grace periods are invalid as contrary to Section 20(11). See Provisions on Vegetables and Melons, Transcontinental, No. 35341, 340 I.C.C. 807, 813 (1972).[5]

As to claim 2 for $351.51 involving a four-day carrier delay, which defendants assert was due to a strike on the Southern Pacific and therefore excusable under the bill of lading (see note 2, *supra*), the court ruled that the delay was not excusable because defendants had not shown that the "delay did not result from its [Southern Pacific] own negligence."

As to defendants' contention that since the record contained no origin inspection reports of the Department of Agriculture, plaintiff had not proved the market value of the goods involved, the district court agreed with plaintiff's position that said Department's auction sales reports adequately measured the damage

plaintiff suffered because of a declining market where defendants have failed to transport with reasonable dispatch.

■■ The liability issue in this case depends principally upon the validity of the 24-hour grace period contained in defendants' tariffs. For the reasons given in Judge Parsons' attached opinion, the pertinent portion of which we adopt as our own, we affirm the district court's determination of defendants' liability, except with respect to the shipment of carrots assertedly delayed by a strike. As to that shipment, the statement in Steinman's affidavit that a strike on the Southern Pacific caused the delay was sufficient to put plaintiff on notice that defendants were blaming the delay on the strike, which, if proven, would constitute a defense (see note 2, *supra*). The parties, should they still desire it, are entitled to a trial of this defense.

■■ As to the district court's award of damages, we agree with defendants that such an award was premature. Nothing in the plaintiff's affidavits or in the defendants' admissions states either that plaintiff suffered actual damages in the amount claimed or that the produce was of sufficiently high quality so that the Agriculture Department's quotations submitted by plaintiff would apply. Since defendants failed to put forth any reason why the well-recognized market differential measure of damages should not be employed, the district court was correct in holding it applicable. However, in order to rely upon the price quotations for "good" quality produce in the Department of Agriculture's publication, *Fresh Fruit and Vegetable Market News* (Boston Market), plaintiff must show either (1) that its produce was "good" quality or (2) that, even if of inferior quality, the differential for "good" pro-

---

market or otherwise than with reasonable dispatch."

**5.** At the oral argument, defendants' counsel attempted to justify the validity of the 24-hour rule by reference to the statutory three-judge court opinions in Ad Hoc Committee on Consumer Protection v. United States, 313 F.Supp. 119 (D.D.C.1970), and 317 F.Supp. 370 (D.D.C. 1970). However, neither decision validated

the 24-hour period of grace. In fact, in the latter case, the court stated:

"By making the rule public and explicit the Commission and the courts can begin by knowing exactly what is offered, and then determining whether it is legal and, just as important, whether it is being evenly applied." 317 F.Supp. at 373.

duce between the day expected and the actual day of arrival is the same for lesser quality produce. Plaintiff makes the latter argument in its brief, but nothing in the record supports this contention. Absent such a showing, a court might award damages that would be correct only for "good" produce, without any proof that plaintiff's produce could be so qualified.[6] See Great Atlantic & Pacific Tea Co. v. Atchison, Topeka and Santa Fe Railway Co., 333 F.2d 705, 708–710 (7th Cir. 1964).

Affirmed in part; reversed in part.

## MEMORANDUM OPINION AND ORDER

This case is before me for ruling on plaintiff's motion for summary judgment. Plaintiff, Peter Condakes Company, Inc., a wholesale dealer of perishable produce, shipped carloads of tomatoes, tangerines, lettuce, carrots and grapefruit for sale at the Boston Auction Market. The defendants, the originating carriers, contracted to transport plaintiff's goods to the Market by rail. The plaintiff, in its claim for delay brought under 49 U.S.C. § 20(11), complains that the defendants or their connecting carriers did not transport its commodities with reasonable dispatch in that it missed the benefit of the Market upon the day when, according to the defendants' operating schedules, the commodities should have been available for sale. Plaintiff further complains that the failure to promptly transport the commodities resulted in a lower market value at destination by which it has been damaged in the amount of $9,617.53.

Plaintiff, supporting its motion with an affidavit from its Traffic Agent, the United States Department of Agriculture market quotations, and its Request for Admissions under Rule 36, contends that (a) the defendants are common car-

riers by rail within the meaning of Section 20(11) of the Interstate Commerce Act, 49 U.S.C. § 20(11); (b) it is the lawful holder of the Bills of Lading; (c) written notice of its claim and suit were seasonably filed; (d) the commodities in question were delivered to the defendants for transportation by rail in interstate commerce; (e) the defendants carelessly failed to transport the goods with reasonable dispatch; and (f) the plaintiff suffered a pecuniary loss by reason thereof.

The defendants, supporting their response to the motion with an affidavit from one of their Senior Claim Account Representatives, argue that the plaintiff is not entitled to summary judgment because at the time the shipments in question moved there was in effect a tariff applicable to the bills of lading which governed delays for market decline purposes. That tariff, the defendants contend, allowed them a 24-hour grace period within which no liability for such delays could be claimed. All except two shipments would fall within this grace period. Of the remaining two, one shipment, they further maintain, was delayed for four days due to a strike. That delay, they conclude, is not chargeable to them under the contract terms of the bill of lading.

The most far-reaching issue raised by the defendants is whether the tariff, which allowed an extra 24-hour grace period before liability could be assessed for delays for market decline, is applicable to a claim charging the carrier with negligence under the Interstate Commerce Act, 49 U.S.C. § 20(11).

The tariff in effect at the time the shipments in question moved was Trans-Continental Freight Bureau Tariff 44–P, Item 5210–N, which in pertinent part reads:

"Note 2. —Shipments moving under rates subject to this note will be gov-

---

6. This holding should not be construed to preclude further proceedings under Fed.R.Civ.P. 56 as to this issue upon remand, if the requisite facts are established by plaintiff. Neither should it be regarded as an adoption of de-

fendants' apparent contention that plaintiff must produce a U. S. Department of Agriculture inspection report to prove the condition of the produce when shipped.

erned by the following policy for payment of claims for market decline.

"Delay for market decline purposes shall be deemed to exist only if placement occurs more than 24 hours later than the time scheduled to elapse between origin tender and destination placement, unless carrier has evidence to establish that the delay in delivery of the shipment is attributable to causes other than carrier negligence."

This tariff provision is an unequivocal limitation on the carrier's liability for market declines attributable to delays. It allows the carrier, even in the most explicit cases of negligence, a 24-hour grace period for which there can be no recovery of damages. Seen in that light, the tariff provision is in derogation of both statutory and case law.

The Interstate Commerce Act, 49 U.S.C. § 20(11), prohibits such limitations of liability.

"Any common carrier, railroad, or transportation company . . . receiving property for transportation . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it . . . *and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability imposed;*" (Emphasis added.)

The courts consistently have interpreted this Section to mean that a carrier may not, by agreement or otherwise, exonerate itself from losses negligently caused by it. *See,* Boston & Maine R.R. v. Piper, 246 U.S. 439, 38 S.Ct. 354, 62 L.Ed. 820 (1918); Cincinnati, N. O. & Texas Pacific R. Co. v. Rankin, 241 U.S. 319, 326, 36 S.Ct. 555, 60 L.Ed. 1022 (1916); Federated Department Stores v. Brinke, 450 F.2d 1223, 1227 (5th Cir. 1971); Lux Art Van Service, Inc. v. Pollard, 344 F.2d 883 (9th Cir. 1965).

Nor have the courts given weight to the argument that the limitation provision was embodied in a tariff filed with and approved by the Interstate Commerce Commission. Boston & Maine Railroad v. Piper, *supra*; Resolute Ins. Co. v. Morgan Drive-Away, Inc., 403 S.W.2d 913 (Mo.App.1966). In fact, since the tariff in this suit was approved in 1970 the Commission has changed its position on the very issue facing this Court.

"The proposed rule would significantly change the basis of carrier liability in two important ways. First, it is clear that the schedules relied on by the courts have been the actual operating schedules, which are deemed to reflect the time usually required for the transportation in question, not constructive schedules. Secondly, the courts have not allowed such a 'grace period,' and carriers have been found to be liable where the alleged delay was far less than 24 hours . . . [T]he proposed 24-hour condition is inconsistent with the present law of carrier liability and that it is, therefore, contrary to section 20(11)." Provisions On Vegetables And Melons, Transcontinental, No. 35341 (340 I.C.C. 807, 813 Feb. 1972).

I find Note 2 of Trans-Continental Freight Bureau Tariff 44–P, Item 5210–N, to be in derogation of the public policy endorsed in 49 U.S.C. § 20(11) and therefore void, null and of no legal effect.

The defendants have argued that one of the shipments, Carrier Claim number S.P. 0315–636–1–2299, was delayed for four days due to a strike. This delay, they maintain, is not attributable to them under the Bill of Lading.

The Bill of Lading provides, *inter alia*:

"Except in the case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for . . . delay occurring . . . from riots or strikes."

Therefore, according to the terms of the contract the carrier must show not only that there was a strike at the time the shipment moved but also that the

delay did not result from its own negligence. This principle is in accord with general case law. Missouri Pac. R. Co. v. King, 167 Ark. 335, 268 S.W. 595 (1925); A. F. Young & Co. v. Grand Rapids & I. R. Co., 201 Mich. 39, 167 N.W. 11 (1918).

Since the plaintiff has shown the unreasonable delay required by Section 2(a) of the Bill of Lading, it has made out a prima facie case of negligence which requires the defendants to come forward with contradictory facts lest summary judgment be granted against it. The defendants have produced an affiant who swears that there was a strike at the time but then goes on to state his legal conclusion: ". . . the contract terms of the bill of lading prohibit liability against the carrier where time is lost on account of a strike; therefore, no damages are due the plaintiff." (Affidavit of Donald R. Steinman). To defeat the plaintiff's motion for summary judgment where it has otherwise sustained its burden the defendants must present contrary material facts. Legal conclusions have never sufficed when material facts are at issue. *See generally* 6 Moore's Federal Practice ¶ 56.15[3]. I therefore find that the defendants have not presented facts sufficient to sustain their affirmative defense in that they failed to show that the delay was not caused by their own negligence.

The defendants' last contention is that since there is no origin inspection report by the United States Department of Agriculture the plaintiff has not proved the market value of the goods involved.

The plaintiff has argued that there is no need for such proof because this is not a "condition claim" where the plaintiff must establish a change in the condition of the commodity. This is a claim for delay where liability is established based upon failure to transport with reasonable dispatch. And the United States Department of Agriculture Auction Sales Reports, which it has submitted, are the best evidence by which to measure the damage it suffered because of a declining market.

I agree with the plaintiff's position.

This Circuit follows the general common law rule of damages in cases of unreasonable delay and damage to goods in shipment. The measure of damages is:

". . . the difference in the market value of the goods at the date and in the condition they were contracted to arrive at their destination and the date on and the condition in which they actually arrived." Great Atlantic & Pacific Tea Co. v. Atchison, T. & S. F. Ry. Co., 333 F.2d 705, at 707, 708 (7th Cir. 1964).

In the instant case there is no claim for damages due to a changed condition in the goods. Plaintiff bases its claim for damages solely on unreasonable delay in the transportation and delivery of the produce and the decline in wholesale market prices. Consequently the appropriate measure of damages for this case is the difference in the wholesale market value at the date they were contracted to arrive at their destination and the date on which they actually arrived. I therefore find that the United States Department of Agriculture Auction Sales Reports for the dates and markets in question are sufficient to establish the wholesale market prices for the contracted dates and the actual arrival dates.

Since the defendants Seaboard Coast Line Railroad Company and Florida East Coast Railway Company have consented to a settlement judgment which was the subject of Count II of the Second Amended Complaint, the plaintiff's claim for damages is reduced in the amount of $3,914.37 and that Count is dismissed.

I enter summary judgment for the plaintiff and against the remaining defendants in the amount of $5,703.16 and the same hereby is so ordered, adjudged and decreed.